Charles A. TOSH et al., Plaintiffs-Appellants,

v.

**BUDDIES SUPERMARKETS, INC., et al.,** Defendants-Appellees.

No. 72–3017.

United States Court of Appeals, Fifth Circuit.

June 22, 1973.

Marvin Menaker, Dallas, Tex., George H. Cohen, Carl L. Taylor, Retail Clerks International Assoc., Washington, D. C., for plaintiffs-appellants.

J. A. Gooch, Edward L. Kemble, S. G. Johndroe, Jr., City Atty., Fort Worth, Tex., Stanley E. Wilkes, Jr., Arlington, Tex., for defendants-appellees.

Before WISDOM, GEWIN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This action sought damages and injunctive relief under 42 U.S.C. § 1983 and damages under a pendent state law libel and slander claim. After a non-jury trial the district .court rendered judgment in favor of the defendants. Finding that the case turns on its singular facts, we affirm. *Ex facto jus oritur.*

The claims asserted arise out of an unsuccessful attempt [1] by the Retail Clerks International Association to unionize the employees of Buddies Supermarkets. As the defendants aptly pointed out in their brief, "the election campaign was, to say the least, a rough and tumble affair." Some five months before the scheduled election, several union organizers were arrested at a Buddies store where, according to the defendants, they engaged in such conduct as blocking customer aisles, using obscene language, and physically assaulting employees of Buddies. Shortly after this incident, the company attempted to obtain background information about these individuals to enable them to deal effectively with any similar future incidents. The chief of security for Buddies sought information from a personal friend, Detective LeFils of the Fort Worth Police Department, now deceased. LeFils subsequently supplied the securi-

---

1. The employees voted against union representation by a better than two-to-one ratio. The election was thereafter set aside by the National Labor Relations Board, 192 NLRB 143.

ty chief with copies of official police department records or "rap sheets" of six individuals, purportedly showing their arrests and convictions, together with their police photographs or "mug shots." Some two months later, in response to a union claim that their organizers had always behaved as gentlemen in its stores, Buddies printed and distributed 14 x 20 inch posters bearing facsimiles of the six rap sheets and photographs with this caption:

WANTED??

DO YOU REALLY WANT THESE RETAIL CLERK UNION LEADERS TO REPRESENT YOU?

VOTE *NO* NEXT THURSDAY!

The posters were exhibited in the non-public areas of the Buddies stores and were referred to by Buddies management during pre-election speeches to Buddies employees. As it turned out, two of the rap sheets published were not those of any of the union organizers but of two persons who bore similar but not identical names. All six union organizers brought this action, including the four whose rap sheets were accurately reproduced on the poster as well as the two with names similar to those of the individuals whose rap sheets were published. The union and various locals were also joined as plaintiffs.

### The Federal Claim

Section 1983, that recently rejuvenated old timer which is enjoying new, wide-ranging and ever-increasing popularity as a basis for federal jurisdiction under 28 U.S.C. § 1343(3), has two essentials. The defendant must act under color of state law and the action complained of must deprive the plaintiff of some right, privilege or immunity se-

cured by the Constitution or Laws of the United States.

*Under Color*—The plaintiffs assert that Detective LeFils' involvement in the circulation of the arrest and conviction records constituted the requisite action under color of state law to meet their burden of establishing this element of § 1983. In further support of their claim of state action, the plaintiffs contend that the "complicity" of the Chief of the Fort Worth Police Department also supplied state action.[2] They predicate the liability of the other defendants under § 1983 on the allegation that they conspired with LeFils.

Even if widespread publication of the information by the Police Department itself would have afforded the plaintiffs a § 1983 cause of action (a question we do not decide), it is clear that Buddies' limited publication in this case was wholly attenuated from the initial action of the police department. Since Buddies' publication plan was not formulated until months after the information was obtained from Detective LeFils, the Police Department had no way of knowing that the information would subsequently be published.[3] These facts simply will not stretch far enough to constitute the minimal state involvement in the subsequent publication requisite to support a § 1983 claim.

*Deprivation of Rights*—Alternatively, we hold plaintiffs' contention that Detective LeFils' release of the records to Buddies, without regard to the later publication by Buddies, did not constitute a deprivation of rights actionable under § 1983. For the purpose of deciding this issue we assume that the release of the records by Detective LeFils supplied the prerequisite action under color of state law.

---

2. It was stipulated that the police chief did not participate in or know of LeFils' release of the records. The alleged "complicity" is based on his failure to promulgate written directives governing release of arrest information such as plaintiffs here seek to have this Court to require.

3. The district court found that when the management of Buddies requested Dyson to secure the background information on the men arrested in its stores, there was no thought of publishing any part of it.

To demonstrate a deprivation of federal rights, the plaintiffs contend that the actions of the defendants deprived them of liberty and property without due process of law in that the release of the records damaged their reputations and interfered with their ability to engage in their occupation. In addition, the plaintiffs argue that the release of arrest records "necessarily meant that the Retail Clerks International Association would be reluctant to assign any of the plaintiffs to organizing campaigns in other states," thus depriving the organizers of their constitutional right to travel. Without intimating whether either of these alleged deprivations would provide the required basis for an action founded on § 1983, and reiterating that our assumption that plaintiffs established the necessary action under color of state law is made *arguendo* only, the record is devoid of any evidence whatsoever to support a conclusion that plaintiffs were in fact deprived of these asserted rights.

The main argument which plaintiffs advance is that the dissemination of the arrest records to non-law enforcement persons or for non-law enforcement purposes violates their constitutional right to privacy. The right to privacy is not expressed in the Constitution. However, Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), has now made its existence explicit, although leaving its scope undefined. Whether this yet embryonic constitutional right restricts the indiscriminate release of arrest records to the merely curious is a question we need not and do not decide in this case. All we say here is that the Constitution does not bar a state agency from furnishing such information to those who present a legitimate need for and interest in the material. The evidence discloses without contradiction that the security officer for Buddies sought to secure the material for what Detective LeFils could properly consider a wholly legitimate purpose—to enable a local merchant to inform itself as to the background of unknown men who had created incidents in its stores in order that it might be better prepared to deal with any repetition of such physically threatening conduct with minimum risk of harm to customers and store personnel. In these particular circumstances, the action of the police department in making this limited release of the information may not be characterized as an invasion of the plaintiffs' right to privacy.

### Injunctive Relief

In addition to finding that the plaintiffs suffered no § 1983 deprivation of rights, we likewise affirm the district court's finding that the plaintiffs made an insufficient showing upon which to predicate injunctive relief. This record will not support a determination by this court that the district court abused its discretion in refusing to grant injunctive relief requiring that the Fort Worth Police Department enact regulations prohibiting the release of arrest records except to law enforcement personnel for law enforcement purposes. The proof shows that a present written policy of this Department requires in part that:

> All such records [criminal records and photographs] shall be kept in the archives of the department and shall not be accessible to any person who is not an accredited police officer seeking such information in line of duty.

This regulation substantially sets out the rule which the plaintiffs urge us to require. Assuming, for the sake of consistency with LeFils' actions, that the department would practice an unwritten exception to this rule allowing the release of arrest records to non-officers who have a reasonable need for the information, nevertheless the regulation with such an assumed exception would be sufficient to prevent indiscriminate circulation of the material. Thus, even were we to adopt the plaintiffs' argument that arrest records can be distributed only on a need-to-know basis, injunctive relief was not shown to be required.

### The Pendent State Claim

A pendent cause of action for damages is asserted based on the Texas law of libel and slander. The district court specifically found that none of the defendants acted with the requisite malice to support this claim, and the plaintiffs have not demonstrated this finding to be clearly erroneous. Nor is there any merit in the plaintiffs' contention that the district court misinterpreted the law so as to require proof of the actual knowledge of the falsity of the materials being circulated. The district court's reliance upon and partially emphasized quotation from Linn v. United Plant Guards, 383 U.S. 53, 86 S.Ct. 657, 15 L. Ed.2d 582 (1966), makes it clear that the court was aware of the proper "knew or should have known" test to be applied.[4]

The judgment of the district court is Affirmed.

---

4. The court italicized Linn's description of the malice test to include publication with knowledge of falsity or with reckless disregard of whether the published matter was true or false.