TOWN OF SOUTH PADRE ISLAND
and Johnny Smith, Appellants,

v.

Fred R. JACOBS, Appellee.

No. 13–85–357–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 26, 1986.

On Rehearing July 6, 1987.

Rehearing Denied Aug. 28, 1987.

Jim Denison, Roger W. Hughes, Harlingen, Paul Cunningham, South Padre Island, R. Gaines Griffin, Sawtelle, Goode, Davidson & Troilo, San Antonio, for appellants.

Thomas Sullivan, Denis A. Downey, Brownsville, for appellee.

Before BENAVIDES, UTTER, and SEERDEN, JJ.

## OPINION

BENAVIDES, Justice.

This appeal arises from an alleged wrongful termination of employment.

Appellee began working as fire chief for the Town on December 1, 1980. Appellee had previously been a member of the Baltimore City Fire Department from 1951–1966. For the next ten years, he and his wife operated a shelter home for the Montgomery County Social Service in Maryland before moving to Texas in 1977. From 1977 to 1980, appellee was employed as fire marshall for the Town, responsible for inspecting new and existing constructions to evaluate compliance with the fire regulations. The Town initially had only a volunteer fire department, and in the Fall of 1980 began organizing a full-time paid fire department.

Appellee testified that in September 1980, the Town's then existing city manager, Kirby Lilljedahl, approached him and offered him the position of fire chief of the official City Fire Department to begin on December 1, 1980. As a condition of his employment, appellee testified that he was required to move from Los Fresnos to the Laguna Madre area. Appellee, although unable to sell his Los Fresnos home, purchased a house in Laguna Madre.

Appellee assumed the task of organizing the new fire department, drafting the Departmental Rules, Regulations, and Procedures, and hiring fire fighters for the department.

Johnny P. Smith assumed the duties as the Town's City Manager on June 1, 1982. On February 3, 1983, after an executive session with the Town Board of Aldermen, Smith informed appellee that his position was being terminated, effective two weeks from that date, February 16, 1983. Smith presented appellee with a copy of a memorandum he had written and was to give to the Board of Aldermen which formed the basis of this lawsuit.

Smith's memorandum contained the reasons why Smith did not believe Jacobs was performing his job as fire chief in a satisfactory manner, and therefore decided to terminate Jacobs' employment with the Town. The memorandum included such reasons as Jacobs' failure to report to work on time, his acceptance of a similar position in a neighboring town and use of the Town's vehicle in that capacity without permission, as well as several enumerated violations of the Departmental Rules, Regulations, and Procedures.

In answer to special issues, the jury found that appellee had entered into an employment contract with the Town of South Padre Island (the Town) for a certain time period, the ending date of the contract being December 31, 1983. The jury found that appellee's employment was terminable with cause, that the Town did not have cause to terminate appellee, that the Town materially breached the contract for employment, and that $26,000 represents the present cash value of the employment contract.

In reference to appellant Johnny P. Smith (Smith), the jury found that he had deprived appellee of his constitutional right to privacy and right to petition grievances without due process of law, while acting under color of state law, and awarded appellee actual damages of $5,000 for privacy deprivation and $5,000 for the deprivation of appellee's right to petition grievances.

In addition, the jury found that Smith did not act in good faith and in the course of his official duties as city manager with regard to appellee's termination, that certain material matters contained in a February 3, 1983, memorandum, written by Smith, were false, and that Smith, acting with actual malice, libeled and slandered appellee when he published the memorandum to the town Board of Aldermen or town employees. The jury found actual damages of $24,000 and exemplary damages as a result of the libel or slander against Smith in the amount of $50,000.

The trial court judgment assessed damages of $26,000 against the Town, $84,000 against Smith, and joint and several recovery of attorney's fees and court costs against appellants.

Appellants bring twenty-six points of error.

By their first two points of error, appellants claim that there is no evidence to support the jury's answers to Special Issues 1, 2, and 3, because the evidence conclusively establishes that appellee was an "at will" employee of the town, or, alternatively, the evidence is insufficient to support the answers and the jury's answers are therefore manifestly unjust. By points of error three, four and five, appellants claim that the jury's answers to Special Issues No. 4, 5 and 6 are immaterial because of appellee's "at will" status, or alternatively, there is no evidence or insufficient evidence to support the answers.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well-established test set forth in *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex. 1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

Appellee, in his Third Amended Original Petition, brought a cause of action for breach of contract, alleging a contract for: (1) a term of years extending until he reached age 65; (2) that if such contract was oral, it might have been performed within one year, and alternatively, (3) the contract was for a yearly term renewable each and every year in which [appellee] was paid a yearly salary. Appellee's petition goes on to state that:

Such contract was evidenced in writing, to wit, by checks disbursing a yearly wage to [appellee]. Accordingly, [appellee] says that he is entitled under this theory of employment contract, to wages owed from point of termination, February 16, 1983, until December 31, 1983.

Appellants and appellee agreed to a Pretrial Order which contains the following provisions:

A. As to the allegations of paragraph IX of Plaintiff's Third Amended Original Petition, Plaintiff shall be limited to proof of a contract which must be implied from the conduct of the Defendants and Plaintiff shall not be permitted to show an express contract to employ the Plaintiff until the age of 65 years since contrary to the Plaintiff's judicial admission that he had neither an oral or written contract to work for the TOWN OF SOUTH PADRE ISLAND, TEXAS, until he retired.

B. As to the allegations contained in Paragraph X of Plaintiff's Third Amended Original Petition wherein Plaintiff alleges a written contract until December 31, 1983, Plaintiff shall be limited to proof of such contract by proof of payroll checks payable to FRED JACOBS from the TOWN OF SOUTH PADRE ISLAND, TEXAS.

There was no evidence of any written agreement or contract, and no evidence of payment by the City of payroll checks to appellee, as provided by Paragraph B of the Pretrial Order. Appellee was never asked whether he had been employed until December 31, 1983. Appellee testified only that he was earning $21,280 per year as fire chief when he was terminated, paid bimonthly.

■ The record is devoid of any evidence which indicates the period of time for the existence of a contract between the Town and appellee. It is well settled in Texas that when an employment contract is oral and for no definite period of time, it is terminable at will by either party. *Currey v. Lone Star Steel Co.*, 676 S.W.2d 205, 212 (Tex.App.—Fort Worth 1984, no writ). In addition, when the terms of employment are indefinite, the loss of wages that the employee would have earned in the indefinite future is not a recoverable item of damages. *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536 (Tex.App.—Corpus Christi 1982, no writ). If any contract existed, it was terminable at will by the Town.

We note that public policy requires a narrow exception to the employment-at-will doctrine for an employee who was discharged for the sole reason that the employee refused to perform an illegal act.

*Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985). Nothing in the record indicates the necessity to explore this exception.

In addition, appellee admitted in his testimony that he drafted a departmental regulation which provides that any member of the fire department "may be discharged with or without cause." We sustain appellants' first through fourth points of error.

Points of error six and seven assert no evidence or insufficient evidence to support the jury's answer to Special Issue No. 7. In response to that special issue, the jury found $26,000 to be the°present cash value of the employment contract between the Town and appellee, and as a result, the trial court awarded $26,000 against the Town.

■ A thorough search of the record reveals that Jacobs' might have been paid at most $21,800 per year. We find no evidence to support the $26,000 finding. Moreover, due to the "at will" status of Jacobs' employment, Jacobs was precluded from recovering these "lost" wages. *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d at 539. We find nothing in the record to support the $26,000 damage award for loss of employment on breach of contract against the Town. Appellants' sixth point of error is sustained.

In his Third Amended Original Petition, appellee claims that he was deprived of his right of privacy and right to petition grievances in violation of his United States Constitutional rights and 42 U.S.C. § 1983 (1986). He asserts that he was denied counsel, was not given the opportunity to call witnesses on his behalf, to present other evidence, and to confront adverse witnesses. Appellee also complained that no adequate record was made of the termination proceeding before the Town Aldermen.

By points eight through eleven, appellant Smith asserts that there was either no evidence or insufficient evidence for the jury to find, in response to Special Issues Nos. 8(b) and 8(c), that he had deprived appellee of his right to privacy and right to petition grievances, while acting under color of state law, in connection with the termination of Jacobs' employment with the Town.

Appellee pled for and recovered damages of $5,000 for his claim based on his "federally protected" right of privacy, and $5,000 damages for his claim based on his right to petition grievances. Smith complains of these damage awards by points of error twenty-two and twenty-three.

Although "[t]he Constitution does not explicitly mention any right of privacy," the United States Supreme Court has recognized that one aspect of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment is "a right of personal privacy, or a guarantee of certain areas or zones of privacy." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973); *See Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). The right of privacy protects only rights deemed "fundamental or 'implicit in the concept of ordered liberty.'" *Roe,* 410 U.S. at 152, 93 S.Ct. at 726.

The record is undisputed that City Manager Smith had conducted an investigation of the City Fire Department with regard to possible illicit drug problems within the department, and the removal and possible theft of a Honda three-wheeled motorbike which was being stored at the fire department facilities. During the course of the investigation, all of the fire department personnel were asked to take polygraph tests, and all complied.

■ Appellee urged at trial that his right to privacy was violated as a result of his taking a polygraph test, surveillance of his home conducted by former Police Chief Arthur Garcia, and an arrest record check which Smith asked Garcia to run on appellee. We have been cited to no authority which would create or establish a violation of appellee's right to privacy. On the contrary, no action lies against Smith for requesting appellee's arrest record. The United States Fifth Circuit Court of Appeals has explicity stated that "the Constitution does not bar a state agency from

furnishing such information to those who present a legitimate need for and interest in the material." *Tosh v. Buddies Supermarkets, Inc.*, 482 F.2d 329, 332 (5th Cir. 1973). *See also White v. Thomas*, 660 F.2d 680 (5th Cir.1981), *cert. den.*, 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148. An arrest record check is known to be a common procedure used by law enforcement investigations of crime or wrongdoing. The polygraph testing was conducted in compliance with an ongoing investigation of the entire fire department. Neither probable cause nor reasonable suspicion are necessary to authorize a surveilance. *Hamilton v. State*, 590 S.W.2d 503 (Tex.Crim.App.1979). A polygraph test administered with voluntary consent does not violate one's right to privacy. There is no evidence in the record which would indicate a violation of appellee's federally protected right of privacy. We sustain appellant Smith's eighth and twenty-second points of error.

We also find that appellee was not deprived of his right to petition for redress of grievances. As this Court noted in *Corpus Christi Independent School District v. Padilla*, 709 S.W.2d 700 (Tex.App.—Corpus Christi, 1986, no writ) (not yet reported):

[a] public employer is also not required by the United States constitution to establish a grievance procedure or respond to grievances lodged by its employees or their union.... The requirement of [Texas Constitution] Article I, § 27, that a government body "consider" petitions brought before it, is much more than even federal law requires. *Padilla* at [704]. *See also Professional Association of College Educators v. El Paso County Community [College] District*, 678 S.W.2d 94, 96 (Tex.App.—El Paso 1984, writ ref'd n.r.e.).

■ Here, appellee had an opportunity to appear before the Town Board of Aldermen. He testified he was notified by Smith that Smith was going to discuss Jacobs' possible termination with the Town Aldermen, and that Smith wanted Jacobs to be present at the meeting in the event there were questions to be answered. At the February 3, 1983 meeting, Jacobs voluntar-

ily stayed outside the meeting. On February 16, 1983, there was another meeting of the Board of Aldermen where Jacobs appeared and was given an opportunity to protest his termination. It was in the appellee's discretion whether to call witnesses or be represented by an attorney. The Board of Aldermen properly considered appellee's petition, they simply did not agree with Jacobs' request to remain fire chief. We find no evidence to support the jury's answer to Special Issue No. 8(c), and sustain appellant Smith's tenth and twenty-third points of error.

Points of error twelve through twenty question the validity of jury answers to Special Issues Nos. 9, 12, 13 and 14. In response to these issues, the jury found that: 1) appellant Smith did not act in good faith and in the course of his official duties as City Manager in his dealings with appellee regarding the termination of appellee's employment with the town; 2) certain material matters contained in the February 3, 1983 memorandum were false; and 3) Smith, acting with *actual* malice, libeled and slandered Jacobs when he published and discussed the memo with the Board of Aldermen or town employees. By points of error twenty-four and twenty-five, appellant Smith complains of the jury's awards, in response to issues 15 and 16, of actual damages of $24,000 and exemplary damages of $50,000 for Smith's libel and slander of Jacobs.

Smith asserts entitlement to absolute immunity from libel and slander actions for statements made in connection with appellee's termination, and alternatively claims a qualified privilege in the communications made to the Town Board of Aldermen as a matter of law.

■ The jury found, however, in answer to Special Issue No. 9, that Smith did not act in good faith and in the course of his official duties as City Manager in his dealings with Jacobs. This finding thwarts an assertion of absolute immunity. Moreover, since absolute privilege completely forecloses a remedy in a civil action, the defense of absolute privilege has traditionally been very limited. *See Parker v. Hol-*

brook, 647 S.W.2d 692 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.). We find no Texas case law or statutory authority to support Smith's entitlement to absolute immunity for his written and/or oral communications. Finally, even if the statements in question were qualifiedly privileged, the jury's finding of actual malice abrogates any such privilege. *Vista Chevrolet, Inc. v. Barron,* 698 S.W.2d 435, 438 (Tex.App.—Corpus Christi 1985, no writ); *see also Jackson v. Cheatwood,* 445 S.W.2d 513 (Tex.1969); *Bergman v. Oshman's Sporting Goods, Inc.,* 594 S.W.2d 814 (Tex.Civ. App.—Tyler 1980). The jury is the exclusive judge of the credibility of witnesses and the weight to be given their testimony. In resolving contradictions and conflicts, they may choose to believe all or part or none of the testimony of any one witness in arriving at the finding it concludes was the most reasonable under the evidence. *Trevino v. Espinosa,* 718 S.W.2d 848 (Tex. App.—Corpus Christi, 1986); *Caterpillar Tractor Co. v. Boyett,* 674 S.W.2d 782, 788 (Tex.App.—Corpus Christi 1984, no writ).

Appellant Smith also asserts in his brief that it is "indisputably established, based upon the plaintiff's own admissions, that the contents of Mr. Smith's February 3 memo are true." We disagree.

For years the courts of Texas have recognized that in libel and slander actions, truth of the defamatory statements is an affirmative defense, the burden of proving truth being placed on the defendant. *Frank B. Hall & Co., Inc. v. Buck,* 678 S.W.2d 612, 623 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Contrary to Smith's assertions, the record reflects that appellant Smith communicated false remarks to third persons in such a way that they may have understood the words to be defamatory. Moreover, while evidence of ill will alone is not enough to establish malice, proof that the defendant entertained ill will toward the plaintiff is probative evidence that the defendant published the information either knowing of its falsity or with reckless disregard for its truth or falsity. *Buck,* 678 S.W.2d at 620.

It was shortly after Smith became city manager in June, 1982 that difficulties between Smith and Jacobs arose. Jacobs testified that when he was hired as fire chief, the basic discussion regarding the hours he would work was "whatever it takes to get the job done." The record reveals that Jacobs did not have a set 8:00 to 5:00 work shift, and was frequently on the job before 8:00 a.m., working long past 5:00 p.m. in the evening. Smith's memo states that, on July 6, 1982, "Mr. Jacobs was warned about coming in late and instructed to concentrate time and efforts on the fire department in an effort to improve operations, morale and help reduce turnover." It also states that on January 20, 1983, ".... He was again officially, with threat of disciplinary action, told by the City Manager work hours were 8:00 a.m. to 5:00 p.m. ...." Smith admitted at trial that he had never told Jacobs he was required to be in his office between the hours of 8:00 a.m. and 5:00 p.m., that Jacobs had no specific shift, nor had Smith ever provided Jacobs with a written evaluation or reprimand. Jacobs stated that to the best of his knowledge, he had never had any difficulties with any of the fire department personnel or any member of the city government, had a good working relationship with the city manager and had never had any grievance or complaints filed against him. Jacobs also testified that he had never been threatened with disciplinary action.

Smith's February 3 memorandum is replete with contradictions to both his and Jacobs' testimony at trial.

Jacobs testified that when he became fire chief in 1980, he was supplied with a vehicle by the city which contained a two-way radio that hooked into the police and fire dispatcher. To his knowledge, there was never any policy, written or otherwise, regarding the use of the vehicle. He used it to visit jobs, inspect construction sites, and as transportation on the Island. The memo asserts that Jacobs was violating departmental rules and regulations by using the departmental vehicle for personal reasons, yet Smith admitted there was no written

policy at that time regarding the use of public vehicles.

In October 1982, Jacobs established a cooperative training program between Port Isabel and Laguna Vista, coordinating with the Coast Guard and public works department. He organized the fire department and implemented a training program to instruct the Town personnel in the use of fire equipment. The memo asserts that on November 9, 1982, Jacobs "was instructed to set up a training program for the department and update all records," yet these things had already been done prior to November 9, 1982.

The memo also states that, on October 25, 1982, "[a]fter discussion of possible drug problems in the fire department, Mr. Jacobs was again instructed to concentrate on the internal operations of his department." It was Jacobs, however, who initially investigated the possibility of a drug problem between two of the firemen, discussed the matter with Smith and then took it to the city attorney.

Appellee volunteered to assist with one fire inspection in a neighboring town, on a Sunday, and was accused of taking another "job" without informing City Manager Smith. With regard to Jacobs' volunteer activity in Laguna Vista, Smith admitted that he was unaware of more than the one inspection Jacobs was alleged to have performed for Laguna Vista. Jacobs also confiscated four three-wheel Honda vehicles which were creating a fire hazard at a nearby condominium. After contacting the owners several times to come collect them at the fire department, one was discovered missing. He immediately reported the matter to the police chief, but the chief did not file a written report until two weeks later. The memo states, however:

> January 31, 1983—two (2) problems were brought to the attention of the City Manager:
>
> 1. Mr. Jacobs had accepted the position of Fire Chief in Laguna Vista while still serving in the same capacity for the Town of South Padre Island. Mr. Jacobs had failed to inform anyone (with the Town) of the job. Mr. Jacobs was doing inspections in Laguna Vista in the Town of South Island Fire Department vehicle without permission.
>
> 2. In November, Mr. Jacobs, confiscated private property from private property and stored the property (Four (4) three-wheel bikes) in the Fire Station. No reports were filed and no City Official was informed. Now it has been reported one (1) of the three-wheeled bikes has been stolen from the fire station and no one knows anything about it.

Also contrary to the memo, Jacobs testified that no one had ever told him to physically be in the office during certain hours; that he was unaware of any morale or turnover problem; that he did check in and out with the dispatcher when he was away from the radio or office; that he did not work a "shift," so could not be in violation of "late reporting for shift;" that he never engaged in conduct discrediting the fire department; that he did not engage in "any activity, entertainment or personal business which would distract or cause to neglect [his] official duties;" that he was not aware of any personal conduct that was reprehensible or damaging to the department; and that he had never done anything which would be considered "immoral," in violation of departmental rules. Smith had no information that showed Jacobs had "neglected his official duties by being engaged in any activity, entertainment or personal business." Although Smith testified that he did not think that Jacobs' failure to pay a debt discredits the department, he asserts that such indebtedness constitutes "immoral conduct." Moreover, the evidence reveals that Smith published or caused to be published the memo to the news media as well as members of the Town Aldermen and city employees.

██ We cannot find that Smith proved the truth of the matters asserted in his memorandum of February 3, 1983, so as to establish his defense of truth to the cause of action for libel and slander. Smith painted appellee as immoral, irresponsible, and incompetent, and made various factual allegations about appellee in his memo to such an effect including the immorality of

Jacobs. The jury had sufficient evidence to find and did find appellant Smith libeled and slandered appellee. The evidence is sufficient to uphold the jury's findings of libel and slander. Appellants' points twelve through twenty are overruled.

Appellant Smith claims the damage awards are "excessive under the facts of the case and show that they are the product of bias, passion or prejudice," and asks for at least a remittitur of damages under each issue. There is no specific attack on the sufficiency of the evidence of actual damages but a claim that they are excessive.

 Factual sufficiency is the sole remittitur standard for actual damages. *Pope v. Moore*, 711 S.W.2d 622 (1986). The damages resulting from libel or slander are purely personal and cannot be measured by any fixed standard or rule, and the amount to be awarded rests largely in the discretion of the jury. *Buck*, 678 S.W.2d at 630. There was evidence that appellee suffered emotional distress and anxiety. Appellee testified among other things that his anxiety caused him to disassociate himself from his family. We find the evidence for damages factually sufficient for libel and slander. Appellant's point of error twenty-four related to the damage issue is overruled.

In response to point twenty-five, it is well-settled that exemplary damages may be allowed in a defamation case where the defamed party establishes the existence of a wilful or wanton act sufficient to support a finding of malice. *British Overseas Airways Corp. v. Tours & Travel of Houston, Inc.*, 568 S.W.2d 888, 894 (Tex.Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). The record is replete with evidence indicating the falsity of allegations contained in the appellant Smith's memo. Additionally, there was testimony as follows:

1. (Jacobs' testimony of Smith's statement to Jacobs upon learning that Jacobs had talked to the mayor before the February 16, meeting.)

'I'm trying to keep this on a professional basis, and if you want to bring it down to the gutter,' ... I'm ready to go that route too ... 'You've got to keep in mind that once you leave here, you're going to have to file applications for other positions and they will be coming back here for references.

2. (Testimony of witness Arthur Garcia, Police Chief of the Town of South Padre Island before Jacobs was fired on statements made to him by appellant Smith.)

(a) He said Mr. Jacobs was a thorn in the side and he wanted to get rid of him.

(b) Try to dig up any information we could on Fred in order to get him terminated.

(c) Well, I tried to see if I could find any trash on Fred to get him terminated as I was ordered to do, sir ...

The evidence in this case sufficiently supported the jury's finding of actual malice so as to support the exemplary damage issue. We overrule appellants' twenty-fifth point.

Appellant's twenty-sixth point of error complains of the recovery of attorney fees on appellee's behalf. Attorney's fees are not recoverable in an action unless provided by statute or a contract between the parties. *New Amsterdam Casualty Co. v. Texas Industries, Inc.*, 414 S.W.2d 914 (Tex.1967); *Willacy County Appraisal District v. North Alamo Water Supply Corp.*, 676 S.W.2d 632, 640 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Here, appellee relied on his action for deprivation of privacy and right to petition grievances as the basis for his attorney's fees. Having reversed the trial court's judgment on those causes, we must reverse the award of attorney's fees as well. Appellant's twenty-sixth point of error is sustained.

 Point of error twenty-one asserts an abuse of discretion in allowing appellee to call two witnesses who were not named as witnesses in appellee's answer to interrogatories. The witnesses' testimony was limited by the court's instruction only as against appellant Smith. Smith's attorney never received a ruling on his objection to the witnesses testifying on Jacobs' behalf, and therefore waived any error. Moreover, appellee discovered the witnesses in question (Arthur Garcia and Homer Gonzalez) only two weeks prior to trial and gave

appellants their names a week before trial. The witnesses were not experts and they testified to facts relevant to the issues before the jury. They had been employees of appellant Town and worked under the direction of appellant Smith at the time of the complained of activities. The trial court offered the defense a week's continuance which the appellants refused. All parties had an opportunity to depose the witnesses prior to trial. The record shows good reason to allow the testimony of the witnesses. We find no abuse of discretion in allowing their testimony, and overrule appellants' twenty-first point.

The judgment of the trial court is REVERSED and RENDERED that appellee take-nothing as against the Town of South Padre Island; and as against appellant Smith the judgment is REFORMED that appellee recover $74,000 plus court costs against appellant Smith.

## OPINION ON MOTION FOR REHEARING

SEERDEN, Justice.

Appellant, Johnny P. Smith, filed a motion for rehearing asserting that the original opinion in this case, holding him liable for $24,000 actual damages and $50,000 exemplary damages, was error. He argues, in addition to other theories, that he is entitled to absolute immunity from liability for any statements made by him in connection with appellee's termination, regardless of whether the statements were truthful and regardless of the motive or malice in which the statements were made.

In *Reagan v. Guardian Life Insurance Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942), the Supreme Court set out certain well-settled rules regarding the doctrine of absolute privilege:

1. An absolutely privileged communication is one for which, by reason of the occasion upon which it is made, no remedy exists in a civil action for libel or slander. Stated in another way, where there is an absolute privilege, no action in damages for language, oral or written, will lie; and this is true even though the

language is false and uttered or published with express malice.

2. Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the basis of a civil action in damages for slander or libel. The falsity of the statement or the malice of the utterer is immaterial, and the rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case.

3. The rule that communications uttered or published in the course of a judicial proceeding are absolutely privileged, applies to proceedings before executive officers, and boards and commissions which exercise quasi-judicial powers.

Absolute privilege is founded on the theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual. *Reagan*, 166 S.W.2d at 913. It protects the public interest by shielding responsible government officials against harassment and inevitable hazards of vindictive or ill-founded damage suits brought on account of actions taken in the exercise of their official responsibilities, even though, at times, it may result in individual citizens suffering pecuniary loss as a result of oppressive or malicious actions by government officials. *Barr v. Matteo*, 360 U.S. 564, 565, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). The likelihood of this later event seems less likely to occur because of the requirement that the utterance or statement be made in a judicial or quasi-judicial proceeding where the potentially injured party has the right to reply and defend himself.

Appellant, Smith, was a public official, and the memo and statements he made concerned another public official. The statements were made in the performance of Smith's duties as City Manager. While Jacobs was not present at the Board of Aldermen's meeting on February 2, 1983, when the Board discussed Jacob's firing,

**144**

Smith's memo of February 3 was given to Jacobs the day it was prepared and contained the charges and complaints being made against Smith. It is clear that this memo was prepared for Jacobs' use when he appeared before the Board on February 16. The Board's meeting on February 16 and the proceedings leading to it, including the meeting of February 2, as well as the preparation of the memo of February 3, constituted a quasi-judicial proceeding within the meaning of the third rule as set out in *Reagan*, 166 S.W.2d at 912.

The nature and incidence of quasi-judicial powers were set out in *Parker v. Holbrook*, 647 S.W.2d 692, 695 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.):

A quasi-judicial power has been described as the power or duty to investigate and to draw conclusions from such investigation. *Id.* At least six powers have been delineated as comprising the judicial function and would be indicative of whether a commission was acting in a quasi-judicial, or merely and administrative, capacity: 1) the power to exercise judgment and discretion; 2) the power to hear and determine or to ascertain facts and decide; 3) the power to make binding orders and judgments; 4) the power to affect the personal or property rights of private persons; 5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and 6) the power to enforce decisions or impose penalties. (cites omitted).

An administrative agency need not have all of the above powers to be considered quasi-judicial, but certainly the more of these powers it has, the more clearly is it quasi-judicial in the exercise of its powers.

In this case, the Town's Board of Aldermen had all of the powers enumerated above with the possible exception of the power to compel the attendance of witnesses.

This Court, in the recent case of *City of Dallas v. Moreau*, 718 S.W.2d 776, 779 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.), held that hiring and firing of city employees is a governmental function for which the city itself is immune from suits for libel. In that case we held that, in light of such governmental immunity, the trial court should have disregarded jury answers finding that the city had libeled its employee and had published private facts about him which were defamatory as immaterial. The extension of absolute privilege to utterances during judicial or quasi-judicial proceedings gives to individuals the same latitude and freedom of expression during such proceedings as the doctrine of governmental immunity gives to the governmental body itself.

We hold that the actions of appellant, Johnny P. Smith, City Manager of the Town of Sought Padre Island, in connection with the investigation and evaluation of the job performance of appellee, Fred R. Jacobs, an employee of the same Town, and the statements and writings, including the memo of February 3, 1983, were protected by absolute privilege and that the trial court erred in granting judgment against Smith based on the jury's answers to issues 12 through 16. The issues should have been disregarded. Appellant Smith's point of error number twenty is sustained. Everything in our original opinion contrary to what is stated herein is withdrawn and should be disregarded.

The judgment of the trial court is REVERSED and RENDERED that appellee take nothing.

BENAVIDES, J., not participating.