[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 4, 2010
JOHN LEY
CLERK

No. 09-11522
Non-Argument Calendar

_____

D. C. Docket No. 06-23029-CV-MGC

RALPH IRWIN,

Plaintiff-Appellant,

versus

MIAMI-DADE COUNTY PUBLIC SCHOOLS,
MIAMI-DADE COUNTY SCHOOL BOARD,
FLORIDA INTERNATIONAL UNIVERSITY,
FLORIDA DEPARTMENT OF LAW ENFORCEMENT,
FLORIDA DEPARTMENT OF EDUCATION,
et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 4, 2010)

Before CARNES, BARKETT, and HULL, Circuit Judges.

PER CURIAM:

Ralph Irwin, proceeding pro se, has sued thirty-seven entities and individuals who can be grouped as follows: (a) the Miami-Dade County Public Schools, superintendent Rudolph Crew, and seven other school officials; (b) Florida state agencies including the Department of Law Enforcement (FDLE), the Department of Education (FDOE), the Department of Labor (FDOL), and the Commission on Human Relations (FCHR), along with eight individual state officials; (c) Florida International University's Board of Trustees, and four individual FIU officials; and (d) the federal Department of Education (USDOE), the Equal Employment Opportunity Commission, eight individual federal officials, and the United States itself. Irwin's grievances against these defendants, which he spells out in a fifty-count complaint alleging numerous statutory and constitutional violations, stem from his difficulties getting hired as a teacher in Florida because of his arrest record. The district court entered final judgment against Irwin on all counts, resolving some of them on motions to dismiss and the rest on summary judgment.

Raising seventy-four issues on appeal, Irwin seeks reversal of that judgment, challenges a variety of procedural rulings by the district court, argues that the

district judge should have recused herself, and seeks sanctions against the defendants. We find no reversible error, and we affirm in all respects.

Irwin's troubles began in 1998 when, during a heated argument with his 19-year-old daughter, he slammed a door and accidentally cut her foot. She called 911, and police arrested Irwin for misdemeanor battery. The state dropped the charge on the daughter's request, and the record of Irwin's arrest was expunged pursuant to Fla. Stat. § 943.0585. Under Florida law, a person with an expunged record may lawfully deny the existence of the underlying arrest or conviction, except when seeking a teacher's license or applying for employment at a school or child care facility. Fla. Stat. § 943.059(4)(a)(6).

In 2002, on his application to teach in the Miami-Dade school system, Irwin answered "No" to a question that asked whether he "ever had a sealed or expunged record as a result of a criminal court proceeding."[1] When a background check with FDLE revealed the existence of the sealed record, the school system denied Irwin's bid for employment on the ground that he had "falsified" his application, and reported the matter to FDOE. After its own investigation, FDOE ultimately cleared Irwin of wrongdoing but put a letter in his file warning that a "future

---

[1] Although the application clearly instructed that "[s]ealed or expunged records must be reported," Irwin believed then and still insists today that his arrest did not count as a "criminal court proceeding" because the matter was dismissed before he actually set foot in a courtroom.

3

violation" of professional standards could threaten his teaching certificate. The combination of the arrest record and the warning letter, Irwin says, effectively blacklisted him from teaching in Florida. In 2003 and 2004 several different school programs, including one run by FIU, either rejected his job applications outright, or hired him but then fired him as soon as the information in his record came to light. Irwin filed complaints with the FCHR, the EEOC, and both state and federal Departments of Education, but did not wait for a right-to-sue letter before bringing this action. Because those agencies did not resolve his complaints to his satisfaction, they and several of their officials are also defendants in Irwin's lawsuit.

Irwin contends that it was illegal to ask him about his expunged arrest record, and that disclosure of the record violated his rights to privacy, equal protection, and due process. Irwin, a white male in his fifties, also alleges that the schools discriminated against him on the basis of his race, sex, and age. He asserts claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 338, 91 S.Ct 1999 (1971); the First, Fifth, and Fourteenth Amendments; 42 U.S.C. § 1983; Title VII; the Age Discrimination in Employment Act; the Federal Tort Claims Act; and various Florida statutes.

For many of his seventy-four claims of error on appeal, Irwin offers nothing

4

more than summary "issue statements" with no explanation as to how or why the district court erred. In some cases he simply cites by docket number to the over three thousand pages' worth of pleadings he filed in the district court. When even a pro se appellant makes only passing reference to an issue and fails to argue it on the merits, the issue is deemed waived. See Farrow v. West, 320 F.3d 1235, 1242 n.10 (11th Cir. 2003); see also Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008); Horsley v. Feldt, 304 F.3d 1125, 1131 n.1 (11th Cir. 2002). Irwin's bare citations to the record do not explain his "contentions and the reasons for them," and thus do not comply with Fed. R. App. P. 28(a)(9).[2] Moreover, litigants may not incorporate by reference arguments from pleadings below in order to evade our page and space limitations on appellate briefing. See Four Seasons Hotels And Resorts v. Consorcio Barr S.A., 377 F.3d 1164, 1167 n.4 (11th Cir. 2004).

Other issues raised by Irwin are moot, because he seeks factual determinations on questions that can be and have been resolved as a matter of law; or are nonjusticiable, because he asks us to construe the meaning of various federal and state statutes that would not carry private rights of action even if they were violated.[3] We will not decide questions "that do not matter to the disposition of a

---

[2] Issues 3–4, 13–17, 25, 27, 29–33, 37–40, 48–49, 53–58, 62–64, 66, and 68–72 are waived for lack of argument.

[3] Issues 2, 5, 6–11, 18, 34–35, 41–47, 50–51, and 61 are either moot or nonjusticiable.

5

case." Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009). Two other arguments—that the defendants should be sanctioned for unspecified discovery violations, and that the district judge should have recused herself for bias—need not be considered because they are raised for the first time on appeal. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004). And they are meritless anyway.

The district court properly disposed of all of Irwin's other claims. The court correctly dismissed Irwin's claims against the federal agencies and the individual federal defendants. Irwin has identified no basis for waiver of sovereign immunity that would permit jurisdiction over his claims against the agencies or against the United States itself. See F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 1000 (1994). There is no cause of action against the EEOC for its alleged mishandling of a discrimination complaint against a third party. Smith v. Casellas, 119 F.3d 33, 34 (D.C. Cir. 1997); Gibson v. Mo. Pac. R.R. Co., 579 F.2d 890, 891 (5th Cir. 1978).[4] There is no underlying state-law tort to support a claim under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1). A Bivens action against individual federal officials is appropriate only if there is no other adequate remedy.

---

[4] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent the decisions of the former Fifth Circuit handed down before October 1, 1981.

See Lee v. Hughes, 145 F.3d 1272, 1275 (11th Cir. 1998). The remedy for employment discrimination is to sue the discriminating employer, not the investigating agency. Even if a cause of action could be asserted, the individual defendants are protected by qualified immunity because nothing they did or failed to do violated any constitutional right of Irwin's, let alone a clearly established one. See Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009).

Irwin's claims against Florida International University, Florida's Commission on Human Rights, and its Departments of Education, Labor, and Law Enforcement are barred by the Eleventh Amendment, as are his claims against individual state defendants in their official capacities. Scott v. Taylor, 405 F.3d 1251, 1255 (11th Cir. 2005). Furthermore, the state agencies are not "persons" who can be sued under § 1983. See Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir. 1995). Qualified immunity protects the state officials from liability in their individual capacities, because they did not violate any clearly established constitutional right of Irwin's. See Oliver, 586 F.3d at 904. Irwin has no constitutionally protected privacy interest in the confidentiality of his arrest record, especially where—as here—state law not only permits but indeed requires its disclosure. See Fla. Stat. § 943.059(4)(a)(6); cf. Tosh v. Buddies Supermarkets, Inc., 482 F.2d 329, 332 (5th Cir. 1973) (the Constitution does not bar a state

7

agency from releasing arrest records to those who have a "legitimate need" for the information).

Irwin's Title VII claim against the Miami-Dade Schools was properly dismissed. Waiver of the exhaustion requirements, as the district court pointed out, would have been pointless because there was no evidence supporting Irwin's claims of discrimination. Irwin never identified any women or minority applicants who were hired as teachers despite failing to disclose an arrest record. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (Title VII plaintiff must show comparator employees were treated more leniently despite similar misconduct). Nor did he allege, as required for an ADEA claim, that he was passed over in favor of a younger person. See Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). The lack of evidence for discrimination is likewise fatal to Irwin's § 1983 claims against the school board and the individual school defendants. Irwin cannot establish an equal protection violation because he failed to show that others similarly situated were treated differently. His due process rights were not violated because, whether as a job applicant or as a newly hired probationary employee, he enjoyed no state-law property right in his employment. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10 (1972); McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir.

8

1994) (en banc). Irwin's First Amendment rights were not violated because his speech, which concerned only his own employment grievances, did not address a matter of public concern and was not constitutionally protected. See Tindal v. Montgomery County Comm'n, 32 F.3d 1535, 1539–40 (11th Cir. 1994). In any case, Irwin has not shown that any defendant prevented him from airing those grievances or retaliated against him for doing so. Irwin's various state-law tort claims also fail because he has not established that any defendant breached any duty owed to him.

The district court properly granted either dismissal or summary judgment against Irwin on all of his claims against all defendants, and we find no reversible error.[5]

**AFFIRMED.**

---

[5] The district court also did not err in denying Irwin leave to amend his complaint, given that the additional claims he sought to add would have failed as a matter of law for several of the same reasons discussed above.