**Gloria HERNANDEZ, Appellant,**

v.

**Shelly HAYES; Dale Hahn; Susanna Hahn; James Jewell; Marlene Hawkins; and The Texas State Teachers Association, Appellees.**

No. 04–94–00466–CV.

Court of Appeals of Texas, San Antonio.

July 31, 1996.

Rehearing Overruled July 31, 1996.

William David Farmer, John Curney, Jr., Johnson, Curney & Fields, P.C., San Antonio, for appellant.

Kevin F. Lungwitz, Texas State Teachers Association, Austin, for appellees.

Before RICKHOFF, HARDBERGER and RON CARR, JJ.

## OPINION

RON CARR, Justice.[2]

This opinion is substituted for the opinion previously delivered and filed on December 20, 1995. We substitute this opinion to make certain factual clarifications. The relief requested in appellant's motion for rehearing is denied. The judgment is affirmed.

This is an appeal from a partial summary judgment which presents us with a single issue of first impression in which we hold that a Texas school board grievance process hearing is a quasi-judicial proceeding and thus statements made during that meeting are absolutely privileged for retaliatory suits.

2. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

Appellant, Gloria Hernandez, sued appellees, Shelly Hayes, Dale Hahn, Susanna Hahn, James Jewell, Marlene Hawkins and the Texas State Teachers Association, over statements made about her by the five individual appellees who testified in a grievance hearing before the Edgewood Independent School District Board of Trustees. The trial court granted summary judgment in favor of all appellees, ruling that such statements at a school board grievance hearing are absolutely privileged. After the summary judgment was severed from the other allegations of the case, this appeal followed. We affirm the summary judgment.

## SUMMARY JUDGMENT FACTS

At the time of the events in controversy, appellant Hernandez and all of the individual appellees were employed by the Edgewood Independent School District (Edgewood I.S.D.). Appellant Hernandez was a vice-principal at Perales Elementary School. Appellees Hayes, Jewell, Susanna Hahn, and Dale Hahn were teachers at Perales Elementary School. Appellee Hawkins was a teacher at another school in Edgewood I.S.D.

During the 1990–1991 school year, twenty-one members of the staff of Perales Elementary School filed an employee grievance against Vice Principal Hernandez and Principal Raquel Escobar concerning Hernandez's mistreatment of students and incompetence as an administrator, and Escobar's failure to deal with the problem. The grievants were represented in the grievance process by the Edgewood Classroom Teachers Association (ECTA), which is affiliated with the appellee, Texas State Teachers Association (TSTA). Appellee Hawkins was the ECTA Grievance Chairperson who assisted the grievants with their presentation. Appellees made a presentation to the Edgewood I.S.D. School Board. The grievants chose appellees Hayes, Jewell, Susanna Hahn, and Dale Hahn to speak on their behalf to the Board of Trustees. Appellee Hawkins also spoke on their behalf as ECTA Grievance Chairperson.

The official notice of the May 9, 1991, meeting of the Edgewood I.S.D. Board of Trustees contained the following items:

Level IV Grievance Hearings Requested by Ms. Marlene Hawkins, Representative, Edgewood Classroom Teachers Association, on behalf of

a. Perales Elementary Group Grievance

In this lawsuit, Hernandez is claiming that statements allegedly made by the individual appellees to the Edgewood I.S.D. Board of Trustees on May 9, 1991, during their presentation of the grievance caused her damages. The content of these statements is not at issue in this appeal. However, for purposes of summary judgment, and accepting Hernandez's version of the facts as true, it is apparent that the appellees' statements all dealt with complaints about how Hernandez treated the school children.

In response to the grievance, the School Board directed the Superintendent and his administration "to investigate and correct any and all problems at this campus."

## THE QUASI–JUDICIAL PRIVILEGE

■ In Texas, an absolute privilege has routinely been extended to judicial proceedings, meaning that any statement made in the trial of any case, by anyone, cannot constitute the basis for a defamation action, or any other action. *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (Tex.1942); *James v. Brown*, 637 S.W.2d 914, 916 (Tex.1982).

■ An absolutely privileged communication is one for which no remedy exists in a civil action. Where there is an absolute privilege, no action in damages for language, oral or written, will lie, "and this is true even though the language is false and uttered or published with express malice." *Reagan*, 166 S.W.2d at 912. In this respect, an absolute privilege is tantamount to immunity. *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex.1987).

■ An absolute privilege has also been extended to statements made in "quasi-judicial" proceedings, such as proceedings before executive officers, boards, and commissions which exercise "quasi-judicial" powers. *Reagan*, 166 S.W.2d at 912; *Lane v. Port Terminal R.R. Ass'n*, 821 S.W.2d 623, 625 (Tex.

App.—Houston [14th Dist.] 1991, writ denied); *Town of South Padre Island v. Jacobs*, 736 S.W.2d 134, 143 (Tex.App.—Corpus Christi 1986, writ denied); *see Parker v. Holbrook*, 647 S.W.2d 692, 695 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

The basis for extending an absolute privilege to quasi-judicial proceedings rests in the public policy considerations that every citizen should have "the unqualified right" to appeal to the agencies of government for redress, "without the fear of being called to answer in damages," and that the administration of justice will be better served if "witnesses are not deterred by fear of lawsuits." *Parker*, 647 S.W.2d at 695.

Two Texas cases have held that in order for proceedings before a governmental board to be considered "quasi-judicial," the board must have the authority to "redress grievances of which it takes cognizance." *McAfee v. Feller*, 452 S.W.2d 56, 57–58 (Tex.Civ. App.—Houston [14th Dist.] 1970, no writ); *Lane*, 821 S.W.2d at 625. The Edgewood I.S.D. School Board was exercising its authority to redress the appellees' grievance when the appellees made the alleged defamatory statements.

At least one Texas court has concluded in summary fashion that entities which have the power to "investigate and draw ... conclusion[s] from such investigation[s]" are quasi-judicial bodies. *Putter v. Anderson*, 601 S.W.2d 73, 76 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Certainly, the Edgewood I.S.D. School Board has this authority. In fact, in the case at bar, it ordered the superintendent of schools to "investigate and correct" the problems raised by the grievants.

In *Town of South Padre Island v. Jacobs*, a proceeding before a town's board of aldermen was held to be quasi-judicial. 736 S.W.2d at 144. In that case, the former fire chief brought a defamation suit against the city manager. The manager had prepared and delivered to the City's board of aldermen a memorandum in which he criticized the fire chief's job performance. The memorandum, which was also published in the local news media, criticized the fire chief for being im-

moral, incompetent and irresponsible, and accused the chief of stealing confiscated property. *Id.* at 140–42. The jury found that the city manager prepared and delivered the memorandum with malicious intent.

■ Nevertheless, the court held that the actions of the city manager were protected by an absolute privilege because the meeting of the town's board of aldermen was a "quasi-judicial proceeding." *Id.* at 144. The court listed indicators to consider in determining whether an entity is a quasi-judicial body:

> [whether the entity has the power] 1) ... to exercise judgment and discretion; 2) ... to hear and determine or to ascertain facts and decide; 3) ... to make binding orders and judgments; 4) ... to affect the personal or property rights of private persons; 5) ... to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of issues on a hearing; and 6) ... to enforce decisions or impose penalties.

*Id.* (citing *Parker v. Holbrook*, 647 S.W.2d 692, 695 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.)).[3]

The *Parker* court was clear that *not all* of the above indicators must be met to qualify an entity as quasi-judicial, but stated that "certainly the more of these powers it has, the more clearly is it quasi-judicial in the exercise of its powers." *Parker*, 647 S.W.2d at 695. Other Texas courts have made it clear that it is not necessary that a government proceeding have all of the above listed powers. In fact, some of the bodies which have been held to be quasi-judicial lack one or more of the listed powers. *See Jacobs*, 736 S.W.2d at 144 (board of alderman did not have power to compel the attendance of witnesses); *Putter*, 601 S.W.2d at 77 (internal affairs division of police department could not make binding orders or judgments; *Martinez v. Hardy*, 864 S.W.2d 767, 773 (Tex. App.—Houston [14th Dist.] 1993, no writ) (district clerk did not have power to compel the attendance of witnesses).

---

**3.** *See also Rodriguez v. Hargrove*, 673 S.W.2d 702, 703–04 (Tex.App.—San Antonio 1984, no writ) (court applied same indicators in determining whether entity was quasi-judicial body).

■ We conclude that a school board grievance process hearing fits firmly within the analytical framework established by Texas jurisprudence involving other quasi-judicial processes.

### POWER TO EXERCISE JUDGMENT AND DISCRETION

School boards clearly have the power to exercise judgment and discretion. *See* Tex. Educ.Code § 23.26(b) (Vernon 1987) (stating "[t]he trustees shall have the exclusive power to manage and govern the public free schools of the district.")

### POWER TO HEAR AND DETERMINE OR TO ASCERTAIN FACTS AND DECIDE

School boards have Texas Constitutional authority to provide their employees the opportunity to present grievances for board consideration. Tex. Const., art. I, § 27; *Professional Ass'n of College Educ. v. El Paso County Community Dist.*, 678 S.W.2d 94, 95–96 (Tex.App.—El Paso 1984, writ ref'd n.r.e.). In fact, the Edgewood I.S.D. was *compelled* by state regulation to have an employee grievance process in place at the time of the events in controversy. 19 Tex.Admin.Code § 61.232 (1986). In compliance with this state mandate, Edgewood I.S.D. had a written policy establishing a grievance procedure.

Appellees' statements were made at a school board grievance hearing held pursuant to the grievance procedure provided by district policy, as required by state regulation. The Edgewood School Board was the sole manager of this grievance process, and had the right to take whatever action it deemed proper in response to the grievance made the subject of this appeal. In the case at bar, the Board of Trustees ordered the Superintendent of schools to "investigate and correct" the problems raised by the grievants.

### POWER TO MAKE BINDING ORDERS AND JUDGMENTS

This power is coexistent with the power to ascertain facts and decide. A school board issues binding orders and judgments in every grievance hearing over which it presides. Its orders are final in nature, as opposed to being merely advisory. The Edgewood I.S.D. Board's grievance policy states that the Board "can take whatever action it deems appropriate" in hearing a grievance. The orders of the Board are binding, and are appealable to the Commissioner of Education, just as a District Court's Final Order is appealable to the Court of Appeals. Tex. Educ.Code § 11.13 (Vernon 1991); *see also* Tex.Educ.Code § 21.301 (Vernon 1987 & Supp.1995) (explaining board's authority over student discipline and expulsion).

### POWER TO AFFECT THE PERSONAL PROPERTY RIGHTS OF PRIVATE PERSONS

School boards commonly take action which affects employees' property rights in their contracts. When an employee's property right is taken away or diminished, the employee may invoke the grievance procedure for a hearing on the matter. *See* Tex.Educ. Code § 21.210; § 13.109 (Vernon 1987 & Supp.1995).

### POWER TO COMPEL ATTENDANCE AND EXAMINE THE TESTIMONY OF WITNESSES, TO HEAR LITIGATION OF ISSUES ON A HEARING, AND POWER TO PUNISH A PERSON WHO COMMITS PERJURY

School boards have the power to compel the attendance of employee witnesses for questioning in any matter, and can do so as a condition of employment. School boards routinely hear the litigation of issues in grievance hearings, as well as termination hearings and any other due process hearing. *See* Tex.Educ.Code § 21.205 (Vernon 1987 & Supp.1995); *see also* § 13.112 (Vernon 1991).

The appellant's claim that perjury cannot be addressed in the grievance process is right in the technical sense but wrong in the practical sense. School boards can dismiss or otherwise discipline employees who give false statements in their testimony before the board or in any other capacity in the employment context. School boards can dismiss an employee for "immorality" or for "good" or "just" cause, among many other reasons. Tex.Educ.Code § 13.109 (Vernon Supp.1995),

§ 13.110 (Vernon 1991), § 21.210 (Vernon 1987). Giving false testimony or other false information would constitute good cause for termination.

### POWER TO ENFORCE DECISIONS OR IMPOSE PENALTIES

School boards can take whatever legal action they deem necessary in handling a grievance. The board may impose penalties ranging from requiring an employee to change his or her behavior, to reassigning the employee to another campus or position, to termination of the employee's contract. School boards do not issue advisory decisions. A school board's order is final and appealable to the Commissioner of Education. TEX.EDUC.CODE § 11.13 (Vernon 1991). All of these decisions would be enforceable because any board of trustees is the employer of all who avail themselves of its grievance process.

\*  \*  \*  \*  \*  \*

■ In addition to the individual factors discussed above, the absolute immunity Texas law affords those in the judicial process extends not only to courtroom testimony, but to all preliminary matters connected with the litigation. *James v. Brown,* 637 S.W.2d 914, 916–17 (Tex.1982); *Hill v. Herald–Post Publishing Co., Inc.,* 877 S.W.2d 774, 782–83 (Tex.App.—El Paso 1994) (attorney's communication to press about lawsuit absolutely privileged), *aff'd in part and rev'd in part on other grounds,* 891 S.W.2d 638 (Tex.1994); *Russell v. Clark,* 620 S.W.2d 865, 868–70 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.) (attorney's communications "preliminary to a proposed judicial proceeding" are privileged). Similarly, events in the grievance system are preliminary, but necessary matters that occur before litigation in the courts.

A public school employee must exhaust administrative remedies before filing suit in district court. These administrative steps include filing a grievance, presenting the grievance to the school board, and then appealing an adverse school board decision to the State Commissioner of Education. Only after these administrative steps have been taken can a lawsuit be brought in state district court. TEX.EDUC.CODE § 11.13 (Vernon 1991); TEX.GOV'T CODE, § 2001.171 (Vernon Supp.1995); *see Caramanian v. Houston Indep. Sch. Dist.,* 829 S.W.2d 814, 818 (Tex. App.—Houston [14th Dist.] 1992, no writ).

Presenting a grievance to a Texas school board is thus a necessary and vital link in the civil justice system. The substance of a school board grievance hearing could end up before the United States Supreme Court or the Texas Supreme Court. It would be self-defeating to grant public school employees immunity for statements made in state district court proceedings, but deny that immunity for the same statements made earlier, during the required preliminary administrative grievance procedure.

Hernandez suggests that a qualified privilege, such as the statutory immunity from suit provided school employees under Section 21.912(b), TEX.EDUC.CODE, is sufficient to protect the grievance process. We disagree. Nothing in Section 21.912 indicates that it is the *only* form of protection afforded public school employees from retaliatory lawsuits, and nothing in the statute indicates that it was intended as an implicit repeal of the quasi-judicial privilege.

Most importantly, the quasi-judicial privilege serves an entirely different purpose than the limited statutory immunity in Section 21.912. The statute protects school employees from lawsuits complaining about their performance *as employees.* The quasi-judicial privilege, on the other hand, is intended to protect the integrity of the *proceeding* itself, and to insure that the decision-making body gets the information it needs. Even when a speaker may not "deserve" the privilege, the law grants it to protect the integrity of the process. *See Reagan,* 166 S.W.2d at 912 (false statements uttered with express malice remain privileged).

A qualified privilege, whether statutory or common-law, would not adequately protect the interests at stake. The absolute privilege is needed, or "a party would be reluctant to fully utilize the grievance process to resolve disputes for fear of reprisal." *Stiles v. Chrysler Motors Corp.,* 89 Ohio App.3d 256, 624 N.E.2d 238, 242 (1993). The mere threat of a retaliatory slander suit, however meritless, will discourage modestly-paid school

employees from criticizing their administrators—even when such criticism concerns an administrator's abuse of students. "[D]amage suits predicated on statements made in the grievance procedures would tend to interfere with frank and strong statements of positions in such proceedings." *Hasten v. Phillips Petroleum Co.*, 640 F.2d 274, 279 (10th Cir.1981); *see also General Motors Corp. v. Mendicki*, 367 F.2d 66, 71 (10th Cir.1966) (defamation suits based on statements made during grievance proceedings would interfere with proper investigation and resolution of disputes). In the context of grievance proceedings, a qualified privilege would be tantamount to no privilege at all.

The absolute privilege is as much a protector of the *process* as it is a protector of those who avail themselves of the process. If there was no absolute privilege, persons with complaints would not use the grievance process to inform school boards of important issues. This case is an example of the dangers that teachers face in pursuing grievances. The process would suffer unless persons using it were immune from lawsuits.

■■■■ Hernandez also claims that applying the quasi-judicial privilege to statements made during school board grievance proceedings would violate the Texas Open Court provision of the Texas Constitution. TEX. CONST. art. 1, § 13. She cites no authority for this novel argument and we have found none. The Open Courts provision restricts the Legislature's power to abrogate common law causes of action. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355 (Tex.1990); *Nelson v. Krusen*, 678 S.W.2d 918, 923 (Tex. 1984); *Todd v. Planned Parenthood*, 853 S.W.2d 124, 126–27 (Tex.App.—Dallas 1993, writ denied). The Open Courts provision does not determine the scope of common law, but conversely, its protections are defined by the scope of Texas common law. *Anderson v. Hodge Boats & Motors, Inc.*, 814 S.W.2d 894, 896 (Tex.App.—Beaumont 1991, writ denied). No court has ever suggested that applying the judicial or quasi-

judicial immunity in appropriate cases is in any way inconsistent with the Open Courts provision; indeed, the Texas Supreme Court has repeatedly affirmed the place of these privileges within the structure of Texas law. *See, e.g., Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942); *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982).

Accordingly, we hold that a Texas school board grievance process hearing is a quasi-judicial proceeding and statements made during those procedures are absolutely privileged.

■■■■ Since there is an absolute privilege for the appellees' conduct, all of appellant's causes of action must fail.[4] Although the privilege arises as a defense to defamation, it must be applied to all of appellant's causes of action. The privilege would be lost if the appellant could merely drop the defamation causes of action and creatively replead a new cause of action. The United States Supreme Court and the Texas Supreme Court have firmly held that a privilege in a defamation cause of action also extends to all other torts plead by the plaintiff. *Hustler Magazine v. Falwell*, 485 U.S. 46, 56, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988); *Channel 4, KGBT v. Briggs*, 759 S.W.2d 939 (Tex.1988).

We caution that this Court's opinion should not be confused to include any statements appellees made outside the May 9, 1992 grievance hearing. These alleged statements are not part of this appeal and cannot create a "material [issue] of fact" requiring reversal of the trial court's judgment, as Hernandez argues. The district court's order granted partial summary judgment as to only statements made during the grievance proceeding, and therefore neither the district court or this Court face the question as to whether other statements, allegedly made outside the May 9 proceeding, are privileged as well.

Finally, our holding does not address immunity considerations extending to everyone

---

4. Hernandez's lawsuit includes causes of action for "false light" and "negligent infliction of emotional distress." Neither cause of action is part of Texas law. *Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex.1994) (rejecting tort of "false light"); *Boyles v. Kerr*, 855 S.W.2d 593 (Tex.1993) (rejecting "negligent infliction of emotion distress" tort); *Valenzuela v. Aquino*, 853 S.W.2d 512 (Tex. 1993) (rejecting tort of "false light").

who might address a school board, but is limited only to the grievance process.

Appellant's single point of error is denied, and the summary judgment is affirmed.