**Affirmed and Memorandum Opinion filed July 1, 2014.**



**In the**

## Fourteenth Court of Appeals

### NO. 14-13-00111-CV

**KRISTIN WILKINSON, Appellant**

**V.**

**USAA FEDERAL SAVINGS BANK TRUST SERVICES, INDIVIDUALLY, AND AS TRUSTEE, WILLIAMS, KHERKHER, HART & BOUNDAS, L.L.P., LOOPER REED & MCGRAW, P.C., AND WILLIAM W. MORRIS, Appellees**

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-70651**

## M E M O R A N D U M   O P I N I O N

Appellant Kristin Wilkinson appeals the trial court's granting of summary judgment in favor of appellees USAA Federal Savings Bank Trust Services ("USAA"), Williams, Kherker, Hart & Boundas, L.L.P. ("WKHB"), Looper Reed & McGraw, P.C. ("LRM"), and William W. Morris, on Wilkinson's claims for

vicarious liability, breach of fiduciary duty, fraud, defamation, breach of contract, and violations of the DTPA. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Appellant Kristin Wilkinson represented a minor plaintiff, M.M., and her mother, Saskia Madison,[1] in a personal injury lawsuit against Warren Reid Williamson and his wife in the 215th Judicial District Court. In March 2005, the Madisons obtained a default judgment for approximately $4.75 million. The First Court of Appeals affirmed the judgment. *Madison v. Williamson*, 241 S.W.3d 145, 149–51 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Wilkinson, who represented the Madisons on a contingent-fee basis, initially represented the plaintiffs in post-judgment collection efforts.

On May 22, 2006, a Harris County probate court signed an order creating a management trust for the minor plaintiff's benefit pursuant to section 867 of the Texas Probate Code. The probate court appointed USAA to serve as trustee.

In an effort to obtain financial assistance for the post-judgment collection efforts, Wilkinson entered into a co-counsel agreement with appellee WKHB in June 2007. Wilkinson agreed to a 50/50 split of her contingent-fee interest, and WKHB agreed to reimburse half of Wilkinson's litigation expenses incurred to date and to fund future litigation costs and expenses.

In June 2008, USAA hired Wilkinson on a contingent-fee basis to pursue judgment collection on behalf of the trust to benefit M.M. In March 2009, the parties signed an amended representation agreement, which increased Wilkinson's contingent-fee interest from 33 1/3% to 40%.

On February 23, 2009, the trial court signed an order appointing a receiver

---

[1] We employ the same pseudonyms used for the plaintiffs in the underlying case.

2

under the turnover statute to take charge of certain of Williamson's property and assets. *See* Tex. Civ. Prac. & Rem. Code § 31.002(b)(3) (West 2011).

In March 2009, Wilkinson asked appellee William W. Morris, an attorney with appellee LRM, to serve as receiver. Morris agreed to "be retained by [Wilkinson] to work as receiver on behalf of USAA," and "[t]o the extent possible," Wilkinson agreed to perform legal work on behalf of the receivership. The trial court ordered the original receiver discharged and appointed Morris as substitute receiver on April 16, 2009.

The State Bar of Texas suspended Wilkinson's license to practice law from September 1, 2009, to February 28, 2010. Wilkinson filed an unopposed motion to withdraw as attorney of record for Morris and USAA and to substitute Harry G. Potter III, an attorney with WKHB, as their counsel. The trial court granted this motion.

On March 8, 2010, USAA told Wilkinson that it would keep Potter and WKHB as its counsel. That same day, Wilkinson terminated her agreement with Morris.

In May 2010, Wilkinson moved the trial court to appoint a substitute receiver. The trial court denied the motion but ordered Morris to report on his progress every 45 days. In October 2010, Wilkinson again moved the trial court to appoint a substitute receiver. In March 2011, Morris moved the trial court to approve a rule 11 agreement involving certain funds owed to Williamson. Wilkinson opposed this motion and again requested that the trial court appoint a substitute receiver. On March 25, 2011, the trial court granted Morris's motion and denied Wilkinson's motion.

The State Bar of Texas again suspended Wilkinson's license to practice law

from May 1, 2011, to April 30, 2013. On May 9, 2011, Morris filed a motion to release funds from the court registry.[2] On May 12, 2011, Wilkinson filed a petition in intervention. On May 20, 2011, the trial court granted Morris's motion, except as to his requests to release an as-yet-undetermined amount of funds to WKHB and the remaining balance to USAA. In June 2011, Wilkinson filed a motion to release 40% of the remainder of the funds from the court registry to her. USAA opposed Wilkinson's motion. Morris requested that Wilkinson's motion be "denied pending a determination by the court of the interest of any parties in the funds of the registry of the court." After the trial court denied Wilkinson's motion on July 22, 2011, she filed the instant suit.[3]

Wilkinson initially filed suit against USAA and WKHB in the probate proceeding, but USAA successfully moved for the case to be transferred to the 215th District Court. Wilkinson then amended her petition to add Morris and LRM as defendants.

In her live petition, Wilkinson alleged the following claims against all the appellees: vicarious liability, breach of fiduciary duty, fraud, and breach of contract. Wilkinson alleged defamation against USAA, WKHB, and Morris. Wilkinson alleged Morris and LRM committed DTPA violations.

---

[2] As of early May 2011, funds relating to the rule 11 agreement and to a family inheritance had been deposited into the trial court's registry. The receiver's motion concerned the distribution of a portion of such funds to the IRS for payment of Williamson's back taxes, to the Office of the Attorney General for payment of Williamson's back child support, and to William's criminal defense attorney pursuant to the court-approved rule 11 agreement.

[3] In October 2011, Wilkinson filed a petition for writ of mandamus concerning the trial court's various orders. The First Court of Appeals denied her petition. *In re Wilkinson*, No. 01-11-00911-CV, 2011 WL 5626172, at *1 (Tex. App.—Houston [1st Dist.] Nov. 18, 2011, orig. proceeding) (per curiam). Wilkinson then filed emergency motions for relief, which the First Court denied. In February and March 2012, Wilkinson filed additional motions seeking the disbursement of funds to her in the underlying case, which the trial court denied. In July 2012, Wilkinson then filed a petition for writ of mandamus in the Texas Supreme Court, which denied her petition without opinion.

4

In September 2012, all the appellees moved for summary judgment. USAA filed separate traditional and no-evidence motions. WKHB filed a hybrid traditional/no-evidence motion for summary judgment. So did Morris and LRM.

USAA argued the following grounds in its traditional motion for summary judgment: (1) dominant jurisdiction over Wilkinson's claims lies in the underlying case; (2) her claims constitute an impermissible collateral attack upon the orders issued in the underlying case; (3) her claims are barred by the absolute judicial proceedings privilege; (4) her breach-of-fiduciary-duty claim fails because USAA does not owe Wilkinson any fiduciary duty; (5) her breach-of-contract claim fails because Wilkinson by her suspension abandoned her contract with USAA; and (6) her "so-called" vicarious liability claim is not an independent cause of action.

USAA moved for no-evidence summary judgment as to all the elements of Wilkinson's breach-of-fiduciary duty, fraud, and defamation claims. With regard to breach of contract, USAA argued Wilkinson has no evidence that USAA breached its contract or that any alleged breach injured Wilkinson.

WKHB argued the following grounds in the traditional portion of their hybrid motion: (1) Wilkinson's lawsuit is an improper collateral attack on the rulings in the underlying case; (2) her defamation claim, and all other claims, are barred by the absolute judicial proceedings privilege, and any allegedly defamatory statements are true; (3) her breach-of-fiduciary-duty and fraud claims fail because WKHB does not owe Wilkinson any fiduciary duty; (4) her breach-of-fiduciary-duty, fraud, and breach-of-contract claims fail because WKHB caused no damages to Wilkinson; (5) her breach-of-fiduciary-duty, fraud, and defamation claims are barred by the economic loss rule; (6) her breach-of-contract claim fails because by her suspension Wilkinson breached the contract before any alleged breach by WKHB; (7) Wilkinson lacks standing and capacity to bring any claims on M.M.'s

5

behalf or as a purported beneficiary of the trust; (8) Wilkinson is not entitled to forfeiture of attorney's fees; (9) dominant jurisdiction exists in the underlying case; (10) as Morris's attorney, WKHB is entitled to derived judicial immunity from Wilkinson's claims; and (11) vicarious liability is not an independent cause of action and, regardless, does not apply here.

In the no-evidence portion of its motion, WKHB asserted that no evidence exists as to one or more of all of the elements of breach of fiduciary duty, fraud, defamation, and breach of contract. Out of an abundance of caution because Wilkinson did not explicitly state them as separate claims in her petition, WKHB asserted that no evidence exists as to one or more of all of the elements of conversion, theft, and professional negligence.

Morris and LRM argued the following grounds in the traditional portion of their hybrid motion: (1) Morris and LRM are entitled to derived judicial immunity from Wilkinson's claims; (2) dominant jurisdiction lies with the underlying case; (3) Wilkinson's lawsuit constitutes an impermissible collateral attack on the orders in the underlying case; (4) her breach-of-fiduciary-duty and fraud claims fail because Morris and LRM do not owe Wilkinson a fiduciary duty; (5) Wilkinson is not entitled to contract damages because of her license suspension and is not entitled to recover mental anguish damages because of the lack of duty owed; and (6) vicarious liability is not an independent cause of action.

In the no-evidence portion of their motion, Morris and LRM asserted that Wilkinson has produced no evidence of all the elements of breach of fiduciary duty, fraud, defamation, DTPA violations, and professional negligence. With regard to breach of contract, Morris and LRM argued Wilkinson has no evidence that Morris or LRM breached its contract or that any alleged breach injured Wilkinson.

6

Wilkinson filed responses to all the appellees' motions for summary judgment. On November 6, 2012, after an oral hearing, the trial court granted all the motions for summary judgment without specifying any grounds. Wilkinson moved for new trial or rehearing, which the trial court denied. This appeal by Wilkinson followed.

## II.    ANALYSIS

Although Wilkinson[4] raises four issues on appeal, they essentially reduce to the following two: (1) that the trial court erred in granting no-evidence summary judgment in favor of WKHB, USAA, Morris, and LRM on Wilkinson's claims of breach of fiduciary duty, vicarious liability, fraud, defamation, breach of contract, conversion and theft, and DTPA violations (issue one)[5]; and (2) that the trial court erred in granting summary judgment in favor of the appellees based on immunity (issue two); collateral attack, Wilkinson's lack of standing or capacity, and dominant jurisdiction (issue three); and the economic loss rule (issue four).[6]

### A. Standard of review

Our review of a summary judgment is de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in

---

[4] While Wilkinson provides her license number in her appellate filings, she indicates that her status is pro se and she is not currently practicing.

[5] Wilkinson does not challenge the granting of summary judgment with regard to and thus has abandoned any professional negligence claims on appeal. *See Duerr v. Brown*, 262 S.W.3d 63, 69 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

[6] Wilkinson also appears to challenge, but within her first issue, certain other traditional grounds—that the appellees owed her a fiduciary duty and that she is entitled to a forfeiture of fees against WKHB. However, because we are able to affirm the summary judgments on other grounds, we do not reach these arguments. *See* Tex. R. App. P. 47.1; *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989).

the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The scope of our review is limited to the summary judgment record upon which the trial court's ruling was based. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848. Once the movant produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010).

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim. Tex. R. Civ. P. 166a(i). A no-evidence motion for summary judgment "must state the elements as to which there is no evidence" and should not be general or conclusory. *Id.*; *id.* 166a cmt. to 1997 change.

A no-evidence motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more essential elements of a claim on which the adverse party would have the burden of proof at trial, and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). Although the nonmovant need not marshal its proof, it has the burden to and must present evidence that raises a genuine issue of material fact on each of the challenged elements. *See id.*;

8

*Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A no-evidence summary judgment motion may not properly be granted if the nonmovant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements. *Ridgway*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence would permit reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Less than a scintilla of evidence exists when the evidence is so weak that it does no more than create a surmise or a suspicion of a fact. *Id.*

Where, as here, a summary judgment fails to specify the grounds upon which the trial court relied for its ruling, we must affirm the judgment if any of the grounds advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 127 (Tex. App.—Houston [14th Dist.] 1994, no writ). Also, "when there are multiple grounds for summary judgment and the order does not specify the ground on which the summary judgment was granted, the appealing party must negate all grounds on appeal." *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 381 (Tex. 1993). Thus, when a particular summary judgment ground goes unchallenged, we affirm the judgment as to that ground. *PAS, Inc. v. Engel*, 350 S.W.3d 602, 608 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 743–44 (Tex. App.—El Paso 2013, no pet.) ("When a summary judgment ground goes unaddressed, its validity is presumed.").

Where, as here, a trial court grants a summary judgment involving both no-evidence and traditional grounds, we usually first address the no-evidence grounds. *See Ridgway*, 135 S.W.3d at 600; *PAS*, 350 S.W.3d at 607. However, where the appellate court concludes that it is required to affirm the trial court's ruling on

summary judgment on traditional grounds, it need not address or review the no-evidence grounds. *Nalle Plastics Family Ltd. P'ship v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 202–03 & n.13 (Tex. App.—Corpus Christi 2013, pet. filed) (affirming summary judgment on failure-to-advise claim on traditional ground where defendant also moved on no-evidence ground); *Shih v. Tamisiea*, 306 S.W.3d 939, 945 & n.8 (Tex. App.—Dallas 2010, no pet.) (same for DTPA claim); *see* Tex. R. App. P. 47.1.

With these standards in mind and where the appellees each brought forth multiple grounds for summary judgment in their various motions, as an initial matter, we first consider whether on appeal Wilkinson has challenged each possible ground on which summary judgment could have been granted for each claim.

## B. Wilkinson's breach-of-contract claim

As a traditional ground for summary judgment, USAA, WKHB, and Morris and LRM all relied on Wilkinson's September 2009 law license suspension, and *Royden v. Ardoin*, 160 Tex. 338, 331 S.W.2d 206 (1960),[7] to attack the validity of her breach-of-contract claim. USAA argued that Wilkinson was barred from pursuing such claim because she had abandoned her contract with USAA; WKHB argued that Wilkinson breached her agreement with WKHB long before any alleged breach by WKHB; and Morris and LRM asserted that Wilkinson's abandonment barred her from collecting damages on any contract.

---

[7] The *Royden* court affirmed summary judgment rendered against an attorney who had sued to recover contingent fees where his license was suspended and rendered it impossible for him to complete the work he was engaged to perform. 331 S.W.2d at 209. This court has indicated that "the long-standing precedent in Texas . . . [is] when a lawyer is unable to fulfill his or her representation of a client, the lawyer is not entitled to recovery of any legal fees from an abandoned case and client." *Cruse v. O'Quinn*, 273 S.W.3d 766, 773 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Royden* in affirming partial summary judgment barring claims under fee-sharing agreement).

While Wilkinson was not required to respond to any traditional summary judgment ground concerning her suspension's effect on the ability to bring her contract claim in order to complain on appeal that the appellees did not meet their summary judgment burden, *see Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23, 225 (Tex. 1999), Wilkinson entirely fails to address, much less offer any argument or authority on, this ground in her brief. Therefore, we affirm the trial court's summary judgment in favor of all the appellees on Wilkinson's breach-of-contract claim. *See PAS*, 350 S.W.3d at 608.

## C. Wilkinson's vicarious liability "claim"

As a traditional ground for summary judgment, USAA, WKHB, and Morris and LRM all attacked the validity of any "claim" by Wilkinson for vicarious liability because it is not an independent cause of action and such doctrine does not apply where the alleged tortfeasor is not liable for damages as a matter of law. *See Crooks v. Moses*, 138 S.W.3d 629, 637–38 (Tex. App.—Dallas 2004, pet. denied). WKHB further argued that vicarious liability cannot be applied to it by virtue of respondeat superior because Potter is not liable for any underlying tort. Again, Wilkinson entirely fails to address, much less offer any argument or authority on, this ground in her brief. Therefore, we affirm the trial court's summary judgment in favor of all the appellees on Wilkinson's vicarious liability "claim." *See PAS*, 350 S.W.3d at 608.

## D. Judicial proceedings privilege, as to USAA and WKHB

Both USAA and WKHB relied on the affirmative defense of judicial proceedings privilege as a traditional ground for summary judgment as to Wilkinson's defamation claims and all other causes of action arising out of

11

communications made during and in connection with the underlying case.[8]

As with the suspension and vicarious liability grounds, USAA contends in its response that Wilkinson's opening brief fails to address the judicial proceedings privilege as a traditional ground and therefore this court should summarily affirm the summary judgment. However, albeit within the defamation subpart of her first issue, which purports to challenge the trial court's granting of summary judgment based on no-evidence grounds, Wilkinson states that none of the appellees "had privilege, immunity or authority to misrepresent the ownership interests in the property . . . and had no privilege or authority to obtain, receive or distribute money held in the Receivership Estate to any entity other than Appellant Wilkinson." Moreover, within her second issue—Did the district court err in granting the summary judgments in favor of Appellees based upon their claims of immunity?—Wilkinson argues that "[n]one of the appellees are entitled to immunity or privilege." While her brief is not a model of clarity,[9] we decline to summarily affirm summary judgment for USAA and WKHB based on a complete failure to address or challenge the judicial proceedings privilege.

In any event, we conclude that the trial court properly could grant summary judgment for USAA and WKHB as to Wilkinson's defamation, fraud, and breach-of-fiduciary-duty claims based on the judicial proceedings privilege.

Texas courts have long recognized that an absolute privilege extends to publications made in the course of judicial and quasi-judicial proceedings—

---

[8] In their hybrid motion, Morris and LRM argued as a traditional ground that they were entitled to the affirmative defense of derived judicial immunity, which barred all of Wilkinson's claims because they are based on Morris's conduct while serving as court-appointed receiver. However, Morris and LRM did not raise the affirmative defense of judicial proceedings privilege as a traditional ground.

[9] Indeed, Wilkinson does not respond to any of USAA's and WKHB's cited authority on the judicial proceedings privilege.

"meaning that any statement made in the trial of any case, by anyone, cannot constitute the basis for a defamation action, or any other action." *Hernandez v. Hayes*, 931 S.W.2d 648, 650 (Tex. App.—San Antonio 1996, writ denied) (citing *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) (per curiam); *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942)); *Lane v. Port Terminal R.R. Ass'n*, 821 S.W.2d 623, 625 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (same); *see Bird v. W.C.W.*, 868 S.W.2d 767, 771–72 (Tex. 1994). The judicial proceedings privilege is "tantamount to immunity"; where there is an absolute privilege, no civil action in damages for oral or written communications will lie, "even though the language is false and uttered or published with express malice." *Hernandez*, 931 S.W.2d at 650 (citing *Reagan*, 166 S.W.2d at 912; *Hurlbut v. Gulf Atlantic Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987)); *see Lane*, 821 S.W.2d at 626. The scope of the absolute privilege extends to all statements made in the course of the proceeding, whether made by the judges, jurors, counsel, parties, or witnesses, and attaches to all aspects of the proceeding, including statements made in open court, hearings, depositions, affidavits, and any pleadings or other papers in the case. *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 27 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *Lane*, 821 S.W.2d at 625.

Determining whether an allegedly defamatory communication is related to a judicial proceeding is a question of law. *Fitzmaurice v. Jones*, 417 S.W.3d 627, 633 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Daystar*, 176 S.W.3d at 28). We consider the entire communication in its context, and must extend the privilege to any statement that bears some relation to the proceeding and must resolve all doubt in favor of the privilege. *Id.* (same). Communications made in the course of a judicial proceeding "also cannot form the basis of liability for other

torts, including negligence, when the essence of the claim is that injury occurred as the result of allegedly false statements made during a judicial proceeding." *de Mino v. Sheridan*, No. 14-05-00210-CV, 2006 WL 1026933, at *2 (Tex. App.—Houston [14th Dist.] Apr. 20, 2006, pet. denied) (mem. op.); *Hernandez*, 931 S.W.2d at 654 ("The privilege would be lost if the appellant could merely drop the defamation causes of action and creatively replead a new cause of action. The United States Supreme Court and the Texas Supreme Court have firmly held that a privilege in a defamation cause of action also extends to all other torts plead by the plaintiff.").[10] Otherwise, the policy behind the privilege, protecting the integrity of the process itself and insuring that the decision-making body gets the information it needs, could be circumvented merely by placing a different label on the claim. *See Bird*, 868 S.W.2d at 771–72; *Attaya v. Shoukfeh*, 962 S.W.2d 237, 239–40 (Tex. App.—Amarillo 1998, pet. denied).

Here, Wilkinson predicated her defamation claims on allegedly "defamatory remarks" that the appellees made "in open court" and to "the judge" about her and about "all kinds of problems" with her contracts. In particular, Wilkinson alleged that at a July 22, 2011 court hearing USAA and WKHB defamed Wilkinson through statements that "there are no assets to collect from and if Wilkinson was to be paid, then the Section 867 Management Trust would not be able to pay legal fees it had separately incurred outside of its contract with Wilkinson, therefore,

---

[10] *See Settle v. George*, No. 02-11-00444-CV, 2012 WL 2923302, at *4 (Tex. App.—Fort Worth Jul. 19, 2012, no pet.) (mem. op.) ("Because the fraud claim is based upon a privileged communication made during the course of these judicial proceedings, the Settles did not allege a viable cause of action for fraud."); *Perdue, Brackett, Flores, Utt & Burns v. Linebarger, Goggan, Blair, Sampson & Meeks, L.L.P.*, 291 S.W.3d 448, 455 (Tex. App.—Fort Worth 2009, no pet.) (absolute judicial proceedings privilege barred "claims for defamation, tortious interference, business disparagement, and conspiracy to commit these torts"); *Laub v. Pesikoff*, 979 S.W.2d 686, 691–92 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (same for claims for libel and slander, intentional interference, civil conspiracy, intentional infliction of emotional distress, negligence, and constitutional violations).

Wilkinson should just not be paid." WKHB "stated that Wilkinson was not entitled to be paid by law," and these inaccurate "statements made publicly in open court[] . . . resulted in the denial of Wilkinson's fees being paid." Wilkinson also alleged that all the defamation occurred "during post-judgment collection matters ongoing for the satisfaction of judgment in the underlying case."

USAA's and WKHB's summary judgment evidence[11] conclusively proves that USAA's and WKHB's allegedly defamatory statements were made to the trial court during the judicial proceeding in the underlying case. Further, the evidence indicates that all of Wilkinson's tort claims and damages essentially flow from her allegation that USAA and WKHB through their participation and false statements in the underlying case prevented Wilkinson from recovering her alleged interest in the underlying judgment. *See Laub v. Pesikoff*, 979 S.W.2d 686, 691 (Tex. App.— Houston [1st Dist.] 1998, pet. denied). According to Wilkinson's own testimony, the "gist" of her claims is that USAA argued and misrepresented to the trial court "that property that is not theirs is theirs to distribute," and based on those arguments, the court incorrectly approved distributions to third parties. Further, USAA defrauded her by "misrepresent[ing] the truth to the court in an effort to get the court to turn over money to third parties to whom it was not owed, depriving [her] of [her] property." Wilkinson testified that WKHB has defamed her: "In argument they have said that I don't—I'm not entitled to my fees, that there is [sic] all sorts of problems." According to Wilkinson, the hearing transcripts show how WKHB "just sort of delve into this gobbledegook in front of the judge, and the judge apparently believed them."

Thus, because USAA and WKHB established their right to summary

---

[11] USAA relied on excerpts from Wilkinson's deposition; WKHB relied on excerpts from Wilkinson's deposition, as well as the transcript of the July 22, 2011 hearing on Wilkinson's motion to release funds from the court registry.

judgment as a matter of law, the burden shifted, and we consider whether Wilkinson presented evidence raising a material fact issue. *See Walker*, 924 S.W.2d at 377. However, even considering Wilkinson's evidence in the light most favorable to her, as we must, *see Valence*, 164 S.W.3d at 661, we cannot conclude that she has raised a fact issue. Indeed, everything Wilkinson points to as summary judgment evidence that involved some kind of communication or representation made by either USAA or WKHB—including hearing transcripts, letters, faxes, emails, motions, and court-ordered status reports—related to and was generated in or as part of the post-judgment turnover and collection proceeding in the underlying case.[12] *See Lane*, 821 S.W.2d at 625. Because the essence of each of Wilkinson's claims for defamation,[13] fraud, and breach of fiduciary duty is that she suffered injury as a result of USAA's and WKHB's communication of allegedly false statements during a judicial proceeding, we conclude that the absolute privilege bars all of her tort claims.[14] *See de Mino*, 2006 WL 1026933, at

---

[12] Wilkinson also points to an expert affidavit and certain deposition testimony, which she attached to her motion for new trial and formal bill of exception, in an attempt to raise a fact issue on privilege and immunity. However, this court cannot consider evidence not on file at the time the trial court ruled on the summary judgment motions. *See* Tex. R. Civ. P. 166a(c); *Gammill v. Fettner*, 297 S.W.3d 792, 802 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see Mathis*, 231 S.W.3d at 52. And Wilkinson does not appeal the trial court's denial of her motion for new trial. She also argues in her reply that she placed the substance of the deposition testimony before the trial court at the summary judgment hearing, but no oral testimony may be considered to support a summary judgment motion. *See* Tex. R. Civ. P. 166a(c).

[13] Although not alleged as such in her live petition, Wilkinson in her response and on appeal also purports to bring a business disparagement claim for publication of disparaging words about her economic interests to third parties, namely, to the IRS, the Office of the Attorney General, Williamson's criminal defense attorney, and an attorney representing the executor of the estate of Williamson's deceased mother. However, regardless of how Wilkinson labels her claim, the evidence establishes that the essence of her allegations is defamation in the context of the underlying judicial proceeding, subject to absolute privilege. *See Bird*, 868 S.W.2d at 771–72.

[14] Both USAA and WKHB would have this court affirm the application of the absolute judicial proceedings privilege as to all of Wilkinson's claims. However, we have not located any Texas case extending the privilege beyond tort claims to contract claims. *See Farah v. Mafrige*

16

*2; *Laub*, 979 S.W.2d at 691–92. Therefore, the trial court did not err in granting summary judgment, and we overrule Wilkinson's second issue, as to USAA and WKHB.

**E. Derived judicial immunity, as to Morris and LRM**

Morris and LRM moved for summary judgment on the traditional ground of derived judicial immunity as an affirmative defense to all of Wilkinson's claims.[15] Wilkinson does not dispute Morris's position as court-appointed receiver nor does she challenge the order appointing him; rather, she contends that merely being appointed does not conclusively establish entitlement to derived judicial immunity and that Morris abused his position and authority. We conclude that the trial court properly could grant summary judgment for Morris and LRM as to Wilkinson's claims for defamation, fraud, breach of fiduciary duty, and DTPA violations based on derived judicial immunity.

When judges delegate their authority or appoint others to perform services for the court, the absolute judicial immunity barring civil liability that attaches to the judge may follow the delegation or appointment. *Dallas Cnty. v. Halsey*, 87

---

*& Kormanik, P.C.*, 927 S.W.2d 663, 674 (Tex. App.—Houston [1st Dist.] 1996, no writ) ("Tort obligations are those imposed by law when a person breaches a duty which is independent from promises made between the parties to a contract; contractual obligations are those that result from an agreement between parties, which is breached."). In an unpublished memorandum opinion and order, the Southern District of Texas made an *Erie* determination that the judicial proceedings privilege would not bar a breach-of-contract counterclaim. *See Tulloch v. JPMorgan Chase & Co.*, No. Civ.A. H-05-3583, 2006 WL 197009, at *3, 7 (S.D. Tex. Jan. 24, 2006) (unpublished). In any event, we already have determined that the trial court properly granted summary judgment in favor of all the appellees as to Wilkinson's breach-of-contract claim.

[15] WKHB alternatively raised derived judicial immunity as a traditional ground in its hybrid motion based on its acting as counsel and as agent for Morris. Because this court already has determined that summary judgment as to WKHB was proper, we do not address derived judicial immunity as to WKHB. *See* Tex. R. App. P. 47.1; *Carr*, 776 S.W.2d at 569; *Rea v. Cofer*, 879 S.W.2d 224, 227 (Tex. App.—Houston [14th Dist.] 1994, no writ).

S.W.3d 552, 554 (Tex. 2002); *Davis v. West*, 317 S.W.3d 301, 306–07 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Delcourt v. Silverman*, 919 S.W.2d 777, 781 (Tex. App.—Houston [14th Dist.] 1996, writ denied). This is because the policy reasons for judicial immunity—protection of individual judges and of the public's interest in an independent judiciary—are also implicated when judges delegate their authority and appoint persons to perform services as officers of the court. *Davis*, 317 S.W.3d at 306–07 (citing *Halsey*, 87 S.W.3d at 554). Officers of the court who are integral parts of the judicial process, such as court-appointed receivers, are entitled to such derived judicial immunity if they actually function as an arm of the court. *Delcourt*, 919 S.W.2d at 782.

Texas uses a functional approach in determining whether a person is entitled to absolute derived judicial immunity. *Halsey*, 87 S.W.3d at 556–57; *Davis*, 317 S.W.3d at 307; *Delcourt*, 919 S.W.2d at 782. Under the functional approach, courts determine whether the activities of the person seeking immunity are intimately associated with the judicial process and whether the person exercises discretionary judgment comparable to a judge. *Halsey*, 87 S.W.3d at 554; *Davis*, 317 S.W.3d at 307; *Delcourt*, 919 S.W.2d at 782. "The functional approach focuses on the nature of the function performed, not the identity of the actor, and considers whether the conduct is like that of the delegating or appointing judge." *Davis*, 317 S.W.3d at 307 (citing *Halsey*, 87 S.W.3d at 555). Once a person is cloaked with derived judicial immunity because of a particular function being performed for a court, every action taken with regard to the function, whether good or bad, honest or dishonest, well-intentioned or not, is covered and immune from civil suit. *Id.* However, derived judicial immunity is lost when the court officer acts in the clear absence of all jurisdiction and outside the scope of his authority. *See Clements v. Barnes*, 834 S.W.2d 45, 46 (Tex. 1992).

18

Morris contends that, as the court-appointed receiver acting within the scope of his authority, he is entitled to derived judicial immunity. *See Davis*, 317 S.W.3d at 307 (gathering cases where court-appointed receivers were entitled to derived judicial immunity). We agree.

Morris's and LRM's summary judgment evidence[16] conclusively proves that derived judicial immunity applies here. Within her petition, Wilkinson complains of Morris's behavior in connection with: his demand for the turnover of certain assets held in trust for Williamson; his delays in collecting funds toward the judgment; his entering into a rule 11 agreement relating to the recovery and payment of funds; his moving for court approval of the agreement; his failure to satisfactorily account for and protect assets; and his fraudulent transfers of funds. In her deposition, Wilkinson acknowledged that she is suing Morris "for his performance as the receiver"; that a receiver garners his authority from the court order appointing him; that Morris serves as "an officer of the court in his capacity as the receiver"; and that Morris had the trial court's approval for all fund disbursements.

As was the order in *Davis*, the trial court's order appointing Morris as substitute receiver "is extremely broad." *See id.* at 307–08. Here, Morris:

> is authorized, subject to control of this Court and with the express purpose and intent to receive and distribute non-exempt assets of Defendant Warren Reid Williamson to satisfy the judgment; to minimize expenses and not interfere with Plaintiff's current representation by Plaintiff's counsel herein; to assist collection of the judgment to the extent requested by Plaintiff's counsel; and subject to the express purpose and intent of this Order, to do any and all acts necessary to the proper and lawful conduct of the receivership . . . .

---

[16] Morris and LRM relied on Wilkinson's live petition, the trial court's April 16, 2009 order appointing Morris as substitute receiver, and excerpts from Wilkinson's deposition.

Such authorized acts included: receiving and disbursing Williamson's funds and property until the final judgment is paid; taking charge of and attending to Williamson's non-exempt property; and subject to the court's further orders taking charge of and managing Williamson's finances until the judgment is paid.

Additional receiver powers "in order to protect the property and the parties' interest in it as Receiver determines necessary for preservation of sale and sale of the property" included:

- to sell property and apply proceeds, after deducting necessary and proper expenses, to the payment of Williamson's debt to the plaintiff;

- to take possession and charge of Williamson's property and assets;

- to ask, demand, or bring suit to collect all sums of money and "things of whatsoever nature or description which now or hereafter shall be or become due, owing, payable or belonging to" Williamson and upon receipt to deliver receipts, releases, or discharges for the same;

- to commence, prosecute, or defend actions touching the subject property, have all lawful ways and means for the collection of any subject property, and make and deliver receipts and releases;

- "[t]o lease, purchase, exchange and acquire and to bargain, contract and agree for the lease, purchase and exchange and acquisition of and to take, receive and possess any real or personal property whatsoever . . . as the receiver deems proper";

- to sell or exchange any portion of the subject property "as the receiver shall see fit";

- "[t]o engage in and actively transact any and all lawful business of whatever kind and nature for the subject property";

- to assign or convey any part of the subject property into existing trusts "as the receiver shall deem proper";

20

- to deposit any monies coming to the subject property, "employ or expend as receiver shall think fit," and "withdraw, in the payment of any debts, or interest payable by the subject property, or taxes, assessments, insurance, and expenses"; and

- "[i]n general, to do all acts, deeds, matters and things whatsoever in or about the subject property and affairs, . . . either particularly or generally described, as fully and effectually to all intents as will effect the purposes of the appointment as receiver in this matter."

Wilkinson makes a blanket assertion that the evidence shows Morris abused his position and authority as receiver.[17]  However, even considering the evidence properly presented[18] in the light most favorable to Wilkinson, *see Valence*, 164 S.W.3d at 661, we cannot conclude that any of the challenged conduct is not intimately associated with Morris's court-appointed receiver function and authority.  *See Davis*, 317 S.W.3d at 307.  Wilkinson's evidence—consisting of hearing transcripts, letters, faxes, emails, motions, and court-ordered status reports—reveals that Morris pursued and recovered funds for the receivership estate, updated the trial court on his progress, and sought court approval relating to the recovery and disbursement of funds, including for Williamson's debts and taxes.  While Wilkinson may disagree that these actions were correct, or even well-intentioned, they fall squarely within the bounds of the trial court's order.  *See id.* at 308.  Further, the rule 11 agreement and disbursements were approved by the trial court, providing further evidence that Morris functioned as an extension or arm of the court.  *See Rehabworks, LLC v. Flanagan*, No. 03-07-00552-CV, 2009 WL 483207, at *3 (Tex. App.—Austin Feb. 26, 2009, pet. denied) (mem. op.) (derived judicial immunity applied where all complained-of acts "were done within

---

[17] Wilkinson does not allege any independent acts or omissions by LRM.

[18] As indicated above, we cannot consider any evidence not properly before the trial court when it granted summary judgment. *See supra* footnote 12.

21

the context of the receivership action, which was ultimately overseen by the trial court and subject to the court's further rulings").[19]

Accordingly, Wilkinson has not raised a fact issue and we conclude that the trial court properly could grant summary judgment as a matter of law on Morris's and LRM's defense of derived judicial immunity.[20]  *See Davis*, 317 S.W.3d at 308; *Walker*, 924 S.W.2d at 377.  We overrule Wilkinson's second issue, as to Morris and LRM.

## F. Conversion and theft

Wilkinson only included one reference to "theft" within the venue and parties section of her live petition: "Plaintiff alleges serious misconduct and theft." However, out of an abundance of caution, WKHB moved for no-evidence summary judgment on any claims for conversion and theft, *see* Tex. Civ. Prac. & Rem. Code §§ 134.001–134.005 (West 2011), arguing that no evidence exists as to

---

[19] To the extent Wilkinson purports to rely on cases addressing the litigation privilege or government official immunity, they have little application here in the context of derived judicial immunity for a court-appointed receiver.  Moreover, her other cited authority is distinguishable. Unlike in *Alpert v. Gerstner*, Wilkinson does not complain of Morris's actions in managing a portfolio of stock, nor did the court order here provide that Morris was granted the duties of a trustee.  *See* 232 S.W.3d 117, 130–31 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (although receiver had immunity "to the extent that she was authorized, as a receiver of the property in the Trusts, to take charge and keep possession of the Trust property," as to her actions in investing and managing stock portfolios, she acted as a representative for the trustee beneficiaries and "not as an agent of the Court"); *see also Conner v. Guemez*, No. 02-10-00211-CV, 2010 WL 4812991, at *3–4 (Tex. App.—Fort Worth Nov. 24, 2010, no pet.) (mem. op.) (distinguishing *Alpert* for same).

[20] Again, we already have determined that we must affirm summary judgment as to Wilkinson's breach-of-contract and vicarious liability claims in favor of all the appellees.  Thus, upholding the derived judicial immunity ground as to Morris's conduct as court-appointed receiver here bars all of Wilkinson's other claims against Morris and LRM for defamation, fraud, breach of fiduciary duty, and DTPA violations.  *See Conner*, 2010 WL 4812991, at *4 (derived judicial immunity barred breach-of-fiduciary-duty claim); *Davis*, 317 S.W.3d at 307 (same for abuse-of-process claim); *Rehabworks*, 2009 WL 483207, at *3 (same for "money had and received" and quantum meruit claims); *Rea*, 879 S.W.2d at 227 (same for DTPA violations).

one or more of all the specified elements. Within her response, Wilkinson included a section entitled "There is Evidence of Fraud, Breach of Fiduciary Duty, Defamation, Breach of Contract, Conversion and Theft." Wilkinson cited to 16 pages of email correspondence between Potter and her as circumstantial evidence of the appellees' "stealing" of her fees but did not explain how that evidence related to any challenged element of conversion or theft. Wilkinson also cited to the entirety of her 80 summary judgment exhibits, totaling over 2600 pages, ostensibly in support of how the appellees "converted" her property.

On appeal, Wilkinson shifts gears. Instead of pointing this court to any specific summary judgment evidence sufficient to raise a fact issue on any element of conversion or theft, she argues, without authority, that "preventively alleging there is a right to summary judgment, either traditional or no-evidence, on a claim that has not been made is improper." First, we note that Wilkinson did not present any such argument in her response. *See* Tex. R. App. P. 33.1. And even assuming without deciding this argument is properly construed as a legal-sufficiency one that need not be raised in the trial court to be preserved, *see Rhone-Poulenc*, 997 S.W.2d at 222–23, 225; *Cuyler v. Minns*, 60 A.W.3d 209, 212–13 (Tex. App.—Houston [14th Dist.] 2001, pet. denied), the essence of any conversion or theft claim is that Wilkinson's inability to recover her alleged property interest was the result of allegedly false statements made during the underlying judicial proceeding. *See de Mino*, 2006 WL 1026933, at *2 (citing *Bird*, 868 S.W.2d at 771–72). Even if unpleaded, as Wilkinson now insists, we conclude that the judicial proceeding privilege would bar such claims. *See Attaya*, 962 S.W.2d at 240 (absolute judicial proceedings privilege "extends to all perceived torts or other causes of action, whether plead or not plead"). Therefore, the trial court did not err in granting summary judgment, and we overrule this subpart of Wilkinson's first issue.

23

Because we otherwise have concluded that the trial court's granting of summary judgment in favor of all the appellees was proper, we need not address the rest of Wilkinson's first issue, nor her third and fourth issues. *See* Tex. R. App. P. 47.1; *Carr*, 776 S.W.2d at 570.

## III.     CONCLUSION

Accordingly, we affirm the trial court's judgment.


/s/     Marc W. Brown
        Justice


Panel consists of Justices Boyce, Christopher, and Brown.